INDIANA STATE HIGHWAY COMMISSION *v.*
JAMES N. PAPPAS AND ZOE PAPPAS.

[No. 2-1074A252. Filed June 30, 1976. Rehearing denied July 27, 1976.
Transfer denied February 23, 1977.]

*Theodore L. Sendak,* Attorney General, *William E. Daily,* Deputy Attorney General, for appellant.

*Robert A. Brothers, John C. Christ, Joseph W. Hadler, Christ, Hadler, Brothers & O'Connor,* of Indianapolis, for appellees.

SULLIVAN, J.—This appeal arises from an award of damages to appellee James Pappas (Pappas) for the wrongful interruption of special electrical service to his machine shop by the appellant State Highway Commission (Commission).

The facts most favorable to Pappas reveal that he lived in a home on Pine Street in Indianapolis. Located on the same property was Pappas' machine shop, where he performed subcontracted work, designing and building fixtures and parts for heavy machinery. In 1968, the State began buying and condemning property in Pappas' neighborhood for a highway construction project. A representative of the Commission approached Pappas and offered him $12,600 for his property. Pappas accepted, deeding the property to the State on July 17, 1968. It was Pappas' understanding at that time that if he did not accept the State's offer he would be evicted within 30 days and would have to go to court to receive compensation for his property, a procedure that would take at least a year.

Thirty days after Pappas transferred the property to the State, a representative of the Commission told him he could remain there, paying rent of $84.00 a month, until he found replacement property. Pappas signed a lease for one year. He paid rent for that year, after which the Commission refused to accept any more rent. The first of what was to be many eviction notices was sent to Pappas shortly after he made his last rent payment.

Pappas began looking for replacement property immediately after deeding his property to the State, spending all of his daylight hours at the task under threat of eviction if he did not do so. He did, however, continue to do some sub-contracting work at night. Pappas quickly discovered that his original property was quite unique in that a grandfather clause allowed him to have his business and residence on the same lot in an area zoned light industrial. Replacement cost of such property was $35,000 to $45,000.

At the end of the lease year, the Commission gave him permission to stay at the original property for another 30 days, provided he continue to look for new property on a full-time basis. Each month thereafter he would talk to a representative of the Commission, showing him properties he had considered and problems he had encountered with them. The Commission would then give him another 30-day extension. This continued for almost three years, when Pappas finally bought recolation property in May 1972. He paid $20,000 for the property, spent $23,000 renovating, and needed $18,000 more to install the required special wiring in the shop. The State reimbursed him for some of his expenses searching for replacement property and for his moving costs. Including the original purchase price, Pappas received altogether about $23,000 from the State.

In order to run the machines in his shop, Pappas needed 400 amp, 3 phase, 4 wire Delta wiring. This special service was provided to him at his original shop pursuant to a contract between Indianapolis Power and Light Co. and himself.

Sometime in April or May of 1970, the Commission cut the lines carrying this power to his shop and removed the transformer on the pole. Someone from the Commission told Pappas it would cost $9000 to restore the service and that he would be evicted within 24 hours if he demanded that it be done. Pappas did not make such a demand, and was thereafter unable to conduct his business at all at his original shop.

In March 1973 Pappas filed a complaint in three paragraphs against the Commission. The first two alleged that fraudulent misrepresentations by the Commission induced Pappas to convey the real estate, and asked that the conveyance be set aside and that he be awarded special damages for lost income and paid-out expenses looking for replacement property. The third paragraph alleged unauthorized termination of the special electrical service by the Commission and asked for $12,000 in damages.

The trial court entered the following findings and conclusions after hearing all the evidence:

"FINDINGS OF FACT

1. That there is no evidence in support of Paragraph I of plaintiffs' Complaint.

2. That there is no evidence in support of Paragraph II of plaintiffs' Complaint.

3. That the plaintiff, James Pappas, had special threephase heavy voltage electrical service running to his machine shop in the rear of 619 North Pine, Indianapolis, Indiana, and this service was terminated by the defendant on or about April 16, 1970.

4. That the replacement cost of the electrical service of the plaintiff, James Pappas, is $18,000.00.

5. That the plaintiff, James Pappas, was unable to operate his machine shop for two and one-third years because of the unauthorized acts of the defendant, consisting of the termination of James Pappas, electrical service.

6. That the yearly net income of the plaintiff, James Pappas, from his machine shop was in the sum of $5,000.00.

CONCLUSIONS OF LAW

1. The law is with the plaintiff and the defendant is liable for damages to the plaintiff, James Pappas, for the replacement cost of his special electrical service.

2. The law is with the plaintiff and the defendant is liable for damages to the plaintiff, James Pappas, for loss of earnings for two and one-third years.

3. There is no evidence that the defendant made false representations to the plaintiffs as alleged in Paragraph I of plaintiffs' Complaint.

4. There is no evidence as to Paragraph II of plaintiffs' Complaint."

The court then entered judgment dismissing paragraphs one and two of the complaint and awarding Pappas $30,000 under the third paragraph. The Commission perfected this appeal, alleging that the evidence does not support a finding that the Commission is liable to Pappas for damages, that no legal theory can support the judgment, and that the trial court's findings and conclusions are insufficient to support the judgment. Pappas did not appeal the dismissal of the first two paragraphs of his complaint.

## I.

## THE COMMISSION IS LIABLE TO PAPPAS FOR TORTIOUS INTERFERENCE WITH HIS POSSESSORY INTEREST IN THE MACHINE SHOP

In its attack upon the findings made by the trial court, the Commission suggests that as a matter of law it could not be held liable to Pappas. The court's finding number five, set out in its entirety, *supra*, found that the Commission's acts were "unauthorized." The Commission argues first that unauthorized acts are not necessarily wrongful acts, and second that the court could not find the acts to be wrongful without making findings as to ownership of the building, the ownership of the wiring, and Pappas' possessory interest in the property.

In the context of all the findings, the Commission's argument that "unauthorized" does not equate with "wrongful" is un-

tenable. The trial court clearly intended to and did find that the Commission's acts in terminating Pappas' electrical service were wrongful. There is ample evidence to support the trial court's conclusion that the Commission was responsible for the termination of Pappas' special electrical service and that such termination was wrongful.

Ownership of the property was not in dispute. Everyone agreed that it belonged to the State. There was no need for the trial court to make findings as to ownership of the building or the wiring.

Although the trial court made no explicit finding that Pappas had a possessory interest in the machine shop, findings 3, 5, and 6 refer to the machine shop as being in Pappas' possession. There was sufficient evidence from which the trial court could conclude that Pappas had such a possessory interest. Although his written lease with the State had expired before the wires were cut, the State through the Commission allowed Pappas to remain in possession for successive 30-day periods without paying rent. He was, therefore, a tenant at sufferance. *Soroka* v. *Knott* (1929), 90 Ind. App. 649, 653, 168 N.E. 703, 705.

If a landlord interferes with his tenant's use and possession, the tenant may maintain an action in tort to recover resulting damages. *See Teagarden* v. *McLaughlin* (1882), 86 Ind. 476; *Indiana Pipe Line Co.* v. *Christensen* (1919), 188 Ind. 400, 123 N.E. 789. There was evidence that the Commission was responsible for the termination of the service and that Pappas was damaged as a result. There was no error in the trial court's determination that the Commission is liable to Pappas.

## II.
## THE TRIAL COURT
## ERRONEOUSLY ASSESSED DAMAGES

The Commission is correct, however, in its contention that the trial court erred in its assessment of damages for the

wrongful interference with Pappas' possessory interest. In general, a plaintiff seeking recompense damage to his possessory right may collect nominal damages merely by proving his rightful possession and wrongful entry by the defendant. Actual damages (i.e., the necessary and natural consequence of the wrongful act) are recoverable only if proved. *Indiana Pipe Line Co.* v. *Christensen, supra,* 188 Ind. at 407-408, 123 N.E. at 792; *Cleveland etc. Rwy. Co.* v. *Born* (1911), 49 Ind. App. 62 at 67, 96 N.E. 777 at 778-9. The usual measure of damages is the decreased rental value of the property. Where the possessor operates a going business on the property, lost profits are considered to be proper evidence of the value of the use of the property if those profits are ascertainable with reasonable certainty. *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. App. 542, 13 N.E. 686; *Wolff* v. *Slusher* (1974), 161 Ind. App. 182, 314 N.E.2d 758; *Indianapolis Rwys., Inc.* v. *Terminal Motor Inn, Inc.* (1953), 124 Ind. App. 1, 112 N.E.2d 596. In any event, damages of a continuing nature may be assessed for a period longer than the unexpired term of the leasehold. *See Bowers* v. *Sells* (1954), 125 Ind. App. 324, 123 N.E.2d 194; *Cleveland Etc. Rwy Co.* v. *Born, supra.*

Applying these principles to the facts before us, we find that there was no evidentiary basis from which the trial court could conclude that Pappas was entitled to receive $30,000 in damages for the termination of his electrical service. The court awarded Pappas $18,000 for installation of special electrical wiring at his relocation property, and $12,000.00 for lost income for the 2⅓ years that Pappas was unable to operate his shop before he moved.

The award of $18,000 for the replacement cost of wiring was clearly inappropriate. Pappas installed heavy duty wiring in his new shop because the construction of the highway forced him to move, not because his wires were wrongfully cut. The Commission is liable only for the consequences of its wrongful cutting of the wires at the

original location. It is not liable for the cost of installing wiring in his new place of business.

The trial court also committed error when it awarded Pappas $12,000 for 2⅓ years of lost income. At the time his wires were cut, Pappas was a tenant at sufferance. See Part I, *supra.* He had permission to remain on the property for only 30 days from the last prior extension by the Commission. Since damages can not accrue beyond the termination of the leasehold, *Cleveland etc. Rwy. Co.* v. *Born, supra; Bowers* v. *Sells, supra,* Pappas can recover only for the value of the use of his machine shop for the duration of that 30-day period.

Pappas suggests that the Commission waived its right to evict Pappas every 30 days for 2⅓ years and therefore can not now successfully assert its right to evict as a bar to the accumulation of damages. Pappas fails to cite any authority in support of this argument and thus is in violation of AP. 8.3 (A) (7) as embraced within AP. 8.3(B). We nonetheless feel that the question warrants our consideration.

The two possible theories that would allow Pappas to accumulate damages for the entire period of his occupancy are estoppel or waiver chargeable to the Commission. Estoppel may arise when one party relinquishes a right through words and conduct which induce another to rely upon them to the second party's detriment. *Templer* v. *Muncie Lodge* (1912), 50 Ind. App. 324, 333, 97 N.E. 546, 549. Estoppel is based upon representation and reliance and hence can not be applied when the facts are equally known or accessible to both parties. *City of Evansville* v. *Follis* (1974), 161 Ind. App. 396, 315 N.E.2d 724. Since Pappas and the Commission were both fully apprised of the situation here, there can be no estoppel.

Waiver, on the other hand, is a "voluntary and intentional relinquishment of a known right." *City of Evansville* v. *Follis, supra,* 315 N.E.2d at 728. Whether there has been waiver is determined solely by the actions of the party holding the right, without reference to the

other party. *City of Evansville* v. *Follis, supra; Templer* v. *Muncie Lodge, supra.* There is no question that the Commission waived its right to evict Pappas every time it gave him another 30-day extension of permission to stay on the premises. Such waiver, however, was binding only as to a particular 30-day period and not as to any or all future periods. The Commission, by granting successive but individual 30-day periods for Pappas' possession did not irretrievably bind itself to a continuation of that gratuitous course of conduct. At the expiration of any such 30-day period, the Commission could have evicted Pappas. *Carger* v. *Fee* (1894), 140 Ind. 572, 39 N.E. 93.

The fact that the Commission did not evict Pappas following wrongful termination of the electrical services is not determinative of Pappas' right to continuing damages for the total period of his occupancy.

The wrongful termination of electric service here is conduct analogous to that normally found in cases asserting a theory of constructive eviction against the landlord. In such cases, the tenant, in appropriate circumstances, is entitled to damages. Such damages, however, are measured by the remaining term of the lease. See Anno. 7 ALR 1103. But a tenant who does not within a reasonable time abandon the premises may not successfully claim constructive eviction. Or if after, abandoning the premises, the tenant resumes possession, he waives the right to collect damages for wrongful eviction. *See generally* 49 Am. Jur. 2d, *Landlord & Tenant* § 303 and § 323 *et seq.*

Pappas understandably did not assert a claim of constructive eviction occasioned by termination of his electrical service since the Commission was permitting him to occupy the premises from month to month without payment of rent and Pappas testified that he was unable to find suitable replacement property.

In any event, we hold that Pappas who at the time of the Commission's tort was holder of a possessory interest of at

most 30 days duration, may not, by accepting successive 30-day tenancies, accumulate the effect of his damages. Under the circumstances here presented, the general rule applies. Pappas' damages may not exceed the duration of the possessory interest to which he was entitled at the time of the landlord's tort.

The judgment is affirmed insofar as it fixes liability as to the Commission. It is reversed with respect to the assessment of damages and the cause is remanded for a redetermination of damages consistent with this opinion and upon the evidence now of record.

White, J., concurs; Lybrook, J., (sitting by designation), concurs.

NOTE.—Reported at 349 N.E.2d 808.