**TURNER TRANSPORTATION, INC.,**
**Employer-Appellant,**

v.

**The INDIANA EMPLOYMENT SECURI-**
**TY BOARD, Members: Max Wright,**
**Richard O. Ristine, Raymond L. Buchan-**
**an, Jr., William H. Andrews, Jr., John**
**Hammond, III, ex officio Secretary to**
**the Board, and William E. Matheny, Lia-**
**bility Referee, Appellees.**

No. 2–482A119.

Court of Appeals of Indiana,
Fourth District.

March 17, 1983.

Bruce A. Hewetson, Donovan, Emery & Hewetson, Bedford, for employer-appellant.

Linley E. Pearson, Atty. Gen., Gerald A. Coraz, Deputy Atty. Gen., Indianapolis, for appellees.

## MEMORANDUM DECISION

YOUNG, Presiding Judge.

Turner Transportation, Inc. (Turner) appeals the decision of a liability referee for the Indiana Employment Security Division that drivers hired by Turner were "employees" under Ind.Code 22–4–8–1, and that Turner thus owed unemployment taxes demanded by the Division. Turner raises three issues:

1. Whether the decision of the liability referee is contrary to law.

2. Whether an earlier decision that drivers were not employees estops the Employment Security Division from making a contrary determination with retroactive effect.

3. Whether equity prohibits enforcement of the Indiana Employment Security Division's assessment because of prejudice to the employer by the one year delay from the initial hearing on the employer's protest to the assessment until the liability referee issued his decision.

We affirm the Liability Referee's judgment.

The evidence in this case shows that Turner is a corporation that arranges delivery of buses built by Carpenter Body Works, Inc. in Mitchell, Indiana, to distributors who purchase the buses. Turner has no direct relationship with the manufacturer. Turner is contacted by the distributor and given a contract for delivery of the buses, and Carpenter Body Works, Inc. is notified by the distributor that Turner will pick up a certain bus. Turner picks up the bus from Carpenter Body Works, Inc. and, after checking out the bus, arranges with a driver to deliver the bus to the distributor's designated place by the distributor's designated time for a fixed total price. The driver must sign for the bus with Turner and the driver is given an advance to cover his expenses in making the delivery. Upon proof of delivery, Turner pays the balance of the delivery price to the driver.

On December 3, 1980, the Employment Security Division issued a Notice and Demand upon Turner for payment of additional and delinquent unemployment taxes, based on its determination that the drivers hired by Turner were employees under the Employment Security Act. Turner filed a timely protest, and a hearing was conducted on March 13, 1981, before a liability referee. After hearing the testimony of witnesses for both parties, the referee took the matter under advisement. On March 9, 1982, the referee issued his decision in favor of the Employment Security Division. The referee's decision included the following findings:

1. The employing unit provides training for the drivers.

2. The employing unit has the right to direct and control those drivers.

3. The drivers service is of a continuing nature, same drivers being used over and over.

4. The drivers themselves do not have a federal identification number.

5. The drivers are covered by the employer's workmans [sic] compensation.

6. The drivers do not advertise or make any investment in advertising place of business or any of the other increments that normally would account for a person in business.

7. The driver does not carry his own liability insurance.

8. There is no written contract.
9. The driver can only claim expenses for gasoline as a result of the fee arrangement set up by the employer.

. . . . .

Based upon the evidence and the findings of fact including the fact that the direction and control of the drivers rest with the employing unit and that the employing unit shows the route to be traveled by its payment arrangement. The employing unit provided both liability and workmans [sic] compensation insurance but the employer collected the accounts, and the employer held the ICC permits. The drivers in question had nothing invested in the facilities and acted only as agents of the employing unit and they also bore no risk or capital expenditures. The service was strictly for the benefit of the employing unit. The referee finds that the drivers in question are employees of the employing unit and as such are subject to the Indiana Employment Security Act and contributions due thereon.

It is this decision of the liability referee that Turner challenges on appeal.

The referee's determination that the drivers were Turner's employees was based upon the definition of "employment" in Ind. Code 22–4–8–1:

"Employment," subject to the other provisions of this Section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, expressed or implied.

(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed. . . .

The referee's decision that Turner's drivers were employees reflects a finding that Turner failed to satisfy its burden of proving the contrary. This negative decision, as Turner recognizes, can only be challenged as being contrary to law. Thus, "we can consider only whether the findings of fact are supported by some evidence of probative value and whether the facts properly stated are sufficient to sustain" the referee's conclusion of law. *Norman A. Boerger Insurance, Inc. v. Indiana Employment Security Board,* (1973) 158 Ind.App. 154, 157–58, 301 N.E.2d 797, 799. We will set aside the decision only if "the facts in the case lead only to a conclusion different from that reached by the referee." *South Bend Fish Corp. v. Employment Security Division,* (1945) 116 Ind.App. 348, 352, 63 N.E.2d 301, 302. In this case, as Turner was required to meet the requirements of Ind. Code 22–4–8–1(a)(A), (B) and (C) *conjunctively, Norman A. Boerger, supra* 158 Ind. App. at 159, 301 N.E.2d at 800, we must uphold the referee's determination if he found, based on "some evidence of probative value," that Turner had failed to show any one of the three elements of Ind.Code 22–4–8–1(a).

■ The referee's conclusion here that Turner's drivers were employees is sustained by the express finding that the drivers were subject to Turner's direction and control. The conclusion is also supported by findings that some drivers worked "on a continuing basis," and that the drivers "bore no risk or capital expenditures," did not advertise themselves as independent businessmen, and were covered by Turner's workmen's compensation and liability insurance. Such findings have been held adequate to show that the worker is not "customarily engaged in an independently established trade . . . or business of the same nature as that involved in the service per-

**303**

formed." *South Bend Fish Corp., supra* 116 Ind.App. at 352–53, 63 N.E.2d at 302. Thus, the question is whether there is "some evidence of probative value" to support the referee's findings.

The finding that Turner had a right to direct and control its drivers is supported by a questionnaire filled out by one of the drivers and admitted into evidence without objection. On it, the driver indicated that he worked under Turner's direction and control, and that he was required to call in for his own benefit. Although this evidence is scanty, it is not without probative value. On this basis alone, the referee could have found that Turner had not met its burden of proof. Further, there was substantial evidence to support the referee's findings indicating that the drivers were not "customarily engaged in an independently established trade ... or business of the same nature as that involved in the service performed." The finding that some drivers worked for Turner "on a continuing basis" is supported by the testimony of one driver, Frank Burton, that he drove exclusively for Turner, on a full-time basis. The findings that the drivers were covered by Turner's liability insurance, used Turner's ICC permits, and had no capital investment in the business are all directly supported by the testimony of Burton and the representative of Turner that testified at the hearing. The finding that the drivers did not advertise their services as drivers for hire was supported by Burton's testimony. Finally, the findings that the drivers bore no business expenses or risk are supported by testimony that Turner advanced them money to pay for gas, gave them a lodging allowance when needed, and carried liability insurance covering them. This evidence has sufficient probative value to support the referee's negative ruling. The decision of the referee is not contrary to law.

Turner next argues that, notwithstanding the correctness of its ruling, the Employment Security Board is estopped to assess unemployment taxes against Turner for the period prior to the referee's decision. Turner points out that, in a previous audit, the Division held that the drivers were *not* employees under the Employment Security Act, and maintains that "it is inequitable for the Division to alter that finding without notice and to tax Turner retroactively."

Generally, the public acting through a governmental body "cannot be estopped by the unlawful acts of public officials." *Cablevision of Chicago v. Colby Cable Corp.,* (1981) Ind.App., 417 N.E.2d 348, 354. The application of estoppel against the state is not, however, absolutely prohibited. *Id.* at 356. The court in *Cablevision of Chicago* held that a city could be estopped to say that the ordinance under which a cable franchise was granted was invalid. The court defended this departure from the general rule by pointing out that (1) the invalidity of the ordinance was not foreseeable to the franchise holder, (2) application of estoppel was in the public's best interest, and (3) application of estoppel would not force an unlawful expenditure of public funds. A similar concern for the loss of public funds was expressed in *Boswell v. Abex Corp.,* (1975) 294 Ala. 334, 317 So.2d 317, 319:

> Taxpayers have no vested right to rely upon an erroneous interpretation of the statute exempting them from taxation. . . . The reason for this rule is that in the assessment and collection of taxes, the State is acting in its governmental capacity and it cannot be estopped with reference to the enforcement of taxes, even when the taxpayer was advised that it was not responsible for a tax. Were this not the rule the taxing officials could waive most of the State's revenue.

Turner has failed to explain why an exception to the general rule should be made here, as it was in *Cablevision of Chicago.* Here, as in that case, the application of the law was arguably unclear. But Turner has not shown that the application of estoppel here would be in the public interest. Further, the application of estoppel here would put the Employment Security Division's auditors in a position to waive needed State revenue each time they made an erroneous determination. The doctrine of estoppel should not apply here.

Additionally, we note that, even if estoppel could be raised here, Turner has totally failed to show that it acted in reasonable reliance upon the Division's earlier determination. There is nothing in the record to show that Turner continued the employment practices supposedly approved in the first audit, or that Turner reasonably viewed the auditor's determination as authoritative.[1] Turner has failed to establish any estoppel here.

 Finally, Turner argues that, because the referee's decision in this case was not issued until nearly one year after the hearing, equity prohibits enforcement of the assessment. Turner apparently bases this argument on the doctrine of laches. Generally, the defense of laches requires a showing of three elements: "(1) inexcusable delay in asserting a right; (2) implied waiver arising from knowing acquiescence in existing conditions; and (3) circumstances causing prejudice to the adverse party." *State ex rel. Crooke v. Lugar,* (1976) 171 Ind.App. 60, 74, 354 N.E.2d 755, 765. Turner has failed to show that a delay in issuing a decision, as opposed to commencing an action, constitutes "delay in asserting a right." Further, such a delay can hardly be characterized as "acquiescence" in Turner's failure to pay the tax. Although the referee's delay in rendering his decision might have caused some prejudice to Turner, a showing of prejudice is not enough by itself to establish a defense of laches.

The judgment of the liability referee is affirmed.

CONOVER and MILLER, JJ., concur.

---

1. The only evidence of this prior audit in the record was elicited from an audit examiner for the Division at the hearing:

 Q. The Indiana Employment Security Division, concerning Turner Transportation had made a prior audit and determination that the drivers were not of an employee/employer relationship, isn't that correct?

 A. That is correct, uh-huh. It involved another claimant investigation.

 Q. This was prior, in time, I mean earlier years to the present claim, is that right?

 A. Yes. I could give you a date if I looked in the file here. As I recall it was about 1976.

 Q. That's fine. We don't need ... I don't think we need the exact date.

 A. It was 1976, June.

This is the entire factual basis for Turner's estoppel argument.