The ADVISORY BOARD OF ZONING APPEALS OF the CITY OF HAMMOND, Indiana, and the City of Hammond, Indiana, Appellants (Defendants Below),

v.

The FOUNDATION FOR COMPREHENSIVE MENTAL HEALTH, INC., Appellee (Plaintiff Below).

No. 45A04–8601–CV–8.

Court of Appeals of Indiana, Fourth District.

Sept. 30, 1986.

Rehearing Denied Dec. 23, 1986.

Joseph O'Connor, Hammond, for appellants.

John F. Tweedle, Highland, for appellee.

YOUNG, Judge.

The Advisory Board of Zoning Appeals of Hammond and the City of Hammond appeal a trial court judgment reversing the board's denial of a certificate of occupancy and compliance to the Foundation for Comprehensive Mental Health. They raise the following issues for our consideration:

1) Did the trial court err in concluding that the facts and circumstances surrounding the issuance of an improvement location permit and two building permits estop the city from refusing to issue a certificate of occupancy and compliance?

2) Did the trial court err in giving significant weight to "Petitions in Opposition" submitted by concerned citizens in reversing the board's decision? [1]

We affirm the trial court.

In the late summer or early fall of 1984, the foundation purchased real property in

---

1. The board raises two additional issues, which we need not consider:

   1) Did the trial court err in concluding that the foundation's proposed use for the subject premises constituted a "boarding, rooming or lodging house"?

   2) Did the trial court err in holding that had the foundation submitted evidence on damages, it could have recovered them in a statutory review proceeding?

The damages issue is moot, since the trial court did not award damages. We will not render an advisory opinion on an issue not properly be-

Hammond. The property is zoned "R–4 High Density Residential—Office District," the use regulations of which allow for boarding, rooming, and lodging houses as a permitted use. The foundation proposed to use the property as a temporary residence for not more than ten teenage and pre-teenage children in need of services. The children would be referred from the Lake Juvenile Court with the ultimate goal being to reunite the children with their families as soon as possible. The residence would staff certain professionals, including counselors, a nurse, and a teacher, and the children would be subject to round-the-clock supervision.

In November of 1984, the foundation, through its contractor, Mikim Construction, applied for and obtained from the city an improvement location permit and two building permits covering the property in question. The foundation then proceeded to make substantial improvements to the property, spending in excess of $151,000. The approval for the use of the funds came from a related non-profit corporation, Tri-City Comprehensive Community Mental Health Center, Inc., which had several homes for children already operating in the immediate vicinity.

After the improvements were completed, the foundation applied for a certificate of occupancy and compliance, which was denied by the zoning administrator on February 20, 1985. The board of zoning appeals affirmed the zoning administrator's decision after notice and a hearing on the matter. The board's findings included the following:

> The petitioner's proposed operation far transcends the activities of a boarding, rooming, or lodging house, whose primary, if not exclusive, function is to provide shelter and meals. The proposed facility's expressed purpose is to provide temporary housing for a specialized

group, subordinate to its main purpose of providing professional care and counselling to children having a special need for that counselling. The proposed use is essentially residential care for children with a special need, and while shelter and board are provided, they are subordinate to its primary activity, care and counselling of children removed from their homes and families in Juvenile Court proceedings.

> Also, the residents of the proposed facility are not "guests;" they are children removed from their families in a court proceeding and placed with Petitioner to receive specialized services and counselling.

(R. 287)

The foundation filed a petition for writ of certiorari with the Lake Circuit Court. After submission of briefs and oral argument the court reversed the decision of the board and ordered the city to issue a certificate of occupancy and compliance to the foundation. The court held that the proposed use constituted a boarding, rooming, or lodging house and that, based on the issuance of the improvement location and building permits, the city was estopped to deny the issuance of the certificate of occupancy and compliance.

The city contends the trial court erred in concluding that the city was estopped by its own conduct to deny issuance of a certificate of occupancy and compliance. We disagree.

■ The elements of equitable estoppel are:

(1) A representation or concealment of material facts;

(2) The representation must have been made with knowledge of the facts;

(3) The party to whom it was made must have been ignorant of the matter;

---

fore this court. Neither will we speculate as to what the trial court meant when it concluded: This Court denies any monetary compensation to Plaintiff as prayed for, the Court specifically finding that there has been no proof of such damages in this regard.

In addition, our holding on the estoppel issue makes it unnecessary to address the issue of whether the use of the premises falls within the definition of a "boarding, rooming or lodging house."

(4) It must have been made with the intention that the other party should act upon it;

(5) The other party must have been induced to act upon it.

*Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.* (1979), 181 Ind.App. 586, 394 N.E.2d 176, 185 (*quoting State ex rel. Crooke v. Lugar* (1976), 171 Ind.App. 60, 354 N.E.2d 755, 765). "Generally, the public acting through a governmental body 'cannot be estopped by the unlawful acts of public officials'." *Turner Transportation, Inc. v. Indiana Employment Security Board* (1983), Ind.App., 448 N.E.2d 300, 303 (*quoting Cablevision of Chicago v. Colby Cable Corp.* (1981), Ind.App., 417 N.E.2d 348, 354). The application of estoppel against the government is not, however, absolutely prohibited. *Turner Transportation, supra* at 303.

In *Cablevision, supra,* we held that a city was estopped to claim invalidity of the ordinance under which a cable franchise was granted. The franchise had relied on the city's long-time recognition of the validity of the ordinance and had expended over $3,000,000 on the cable television project.

The *Cablevision* decision focused on the public interest at stake. Likewise, we find that the public interest will be threatened in this case if the city, under its ordinance, as written, is allowed to issue building permits to property owners who rely on the permits and expend large sums of money, only to be informed at the last minute that they cannot occupy the building for which they expended the funds. We therefore conclude that this case falls within the public interest exception as developed in *Cablevision,* and that estoppel can be applied if the elements are met.

The city, through its zoning ordinance, represented to the foundation that there would be no problem with the use of the proposed premises under R-4. The city argues that building permits deal solely with structure, not with use. We disagree. The zoning ordinance provides:

No such Building Permit shall be issued to erect a building or structure or make any change of use of a building or land unless it is in conformity with the provisions of the Ordinance and all amendments hereto.

City of Hammond Zoning Ord. 4683, Title XIX, § 2(A). This language indicates that prior to the issuance of a building permit the use as well as the structure of the buildings is to be considered.

In addition, the city had knowledge of the foundation's plans concerning the use of the proposed premises. The foundation's application for the improvement location permit included the following notation: "Remodel for boarding, rooming—lodging house. * Not more than 10 guests." Its application for the first building permit stated "R4", the category under which the property was zoned and the category under which the foundation contended it would operate.

Other evidence regarding the city's knowledge of the foundation's plans for the premises was presented at the board of zoning appeals meeting. John Tweedle, counsel for the foundation stated:

These building permits were issued on the absolute [,] full and exact knowledge of what we intended to do at 6020 Hohman Avenue.

(R. 266) His statement was corroborated by the testimony of Glenn Kuipers, executive director of Tri-City:

[W]e talked to the Building Administrator; we told them what we were going to do. So, we weren't trying to play games about that. When we wanted to go with Towle House we went straight ahead with it. When we wanted to go with Our House we went ahead with it. And we talked with people in the City; we're not trying to slide things in. I think we've been up front on those kind of things.[2]

---

2. This testimony also reveals that other such homes existed in the area, that Tri-City had dealt with the city before regarding the homes, and that the city therefore had further reason to know of the proposed plans for the property in this case.

(R. 276) Therefore when the city issued the building permits it had knowledge of the foundation's plans regarding use of the proposed premises. The city's approval of the building plans also constituted an approval of the proposed use.

The city argues, however, that the estoppel claim fails because the foundation lacked ignorance regarding the zoning problems. Estoppel cannot be applied when the facts are equally known or accessible to both parties. *Indiana State Highway Commission v. Pappas* (1976), 169 Ind.App. 611, 349 N.E.2d 808, 813. Persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property. *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738. The foundation is therefore charged with knowledge of the zoning ordinance provisions.

The zoning ordinance provides that a boarding, rooming, or lodging house is a permitted use under R–4. City of Hammond Zoning Ord. 4683, Title V, § 2. A boarding, rooming, or lodging house is defined as:

> a dwelling (not a single family or two family dwelling, apartment house, or a motel or hotel) providing lodging with or without meals, and having lodging accommodations for less than 10 guests.

City of Hammond Zoning Ord. 4683, Title I, § 13. The foundation continuously contended that the use of the proposed premises would fit within the definition of a boarding, rooming, or lodging house. Nothing in the ordinance alerted the foundation that its use would not fit into this category. The city's issuance of the permits affirmed the foundation's belief that the use fit the definition contained in the ordinance. Only the city could have made a contrary determination. Its failure to do so resulted in the foundation expending in excess of $151,000 for renovation and upkeep of the property. Under the circumstances, the trial court properly concluded that the city was estopped to deny the foundation a certificate of occupancy and compliance.

The city also contends the trial court erred in giving significant weight to "Petitions in Opposition" filed by numerous citizens residing in the vicinity of 6020 Hohman Avenue. In its order, the trial court made the following observation regarding the petitions:

> This Court feels compelled to comment on portions of the return to the Writ of Certiorari in the form of "Petitions in Opposition" duly filed before the Board. In examining a map of the City of Hammond, certainly many of the remonstrators lived a distance far away from the real estate in question. Their conclusion that the facility is to be a "halfway house for troubled teenagers" is not born out by the evidence submitted to the ABZA by FOUNDATION. The fact that FOUNDATION does operate other facilities and/or residential housing locations in a one square mile of this real estate would cause this Court to conclude that the use of FOUNDATION'S real estate is in character with the neighborhood. The children that are going to be placed at FOUNDATION'S location are those children who have been identified by the Lake County Juvenile Court as children in need of services; they are not delinquent children.

(R. 358) Specifically, the city argues that since the board's findings were silent as to the petitions, the trial court should not have given them such significant consideration. We do not believe the court's statement amounts to anything other than what it purports to be: a comment. The record clearly justifies the court's holding on the basis of estoppel, and we will not speculate as to the intent of the trial court in making such a comment regarding the petitions. Accordingly, we affirm the judgment of the trial court.

CONOVER, P.J., and MILLER, J., concur.