**FRATERNAL ORDER OF EAGLES LODGE NO. 255, Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 80T05–8609–TA–00010.

Tax Court of Indiana.

Feb. 19, 1987.

Thomas J. Simmons, Simmons & Fleming, Kokomo, for petitioner.

Linley E. Pearson, Atty. Gen., by James R. Green, Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

## STATEMENT OF THE CASE

This is a case brought upon the State Board of Tax Commissioners' (hereinafter the Respondent) denial of the Fraternal Order of Eagles' Lodge No. 255 (hereinafter the Petitioner) Petition for review of Petitioner's application for property tax exemption for the year 1983. The exemption was sought pursuant to IND.CODE 6–1.1–10–16 (1979 Supp.). Reversed and Remanded.

## FACTS

The Court finds the following to be the facts to-wit:

1. That on the assessment date, March 1, 1983, the Petitioner was the owner of real property commonly known as 1221 East Lincoln Road in Kokomo, Indiana. That the land consisted of 6.8 acres. On the land there was a lodge building consisting of a social room, dining room, lodge room, bowling alley, card and game room, and an office. In addition to the lodge building, there was also a covered pavilion on the land.

2. That on May 25, 1983, as required by the law, the Petitioner filed with the Howard County Auditor a State Form 5743, entitled "Required Information for Property Tax Exemption." In that application for exemption, the Petitioner claimed its property should be exempt from real property taxes for the 1983 tax year. The Petitioner stated the following reasons why the use of its property qualified for an exemption from real property taxes:

To strengthen the bonds of fraternalism and social activities between members. To promote patriotic, humanitarian and fraternal teaching of the F.O.E. and to inculate (sic) among the members a sense of service to their state and to their nation.

To work and raise funds for charitable and humanitarian funds set up specifically for the purpose by the F.O.E.

3. That on July 15, 1983, the Howard County Board of Review met regarding the Petitioner's application for exemption from real property taxes for the 1983 tax year, and disallowed the claim for exemption.

4. That on August 15, 1983, a petition for review of the exemption was filed by the Petitioner with the Respondent requesting review of the Petitioner's application for exemption from real property taxes for the 1983 tax year.

5. That on January 20, 1984, the Respondent sent to the Petitioner a notice entitled "Notice and Review of Exemption" notifying the Petitioner that on February 8, 1984, the Respondent would hold a hearing at the Howard County Auditor's Office for the purpose of reviewing the action of the Howard County Board of Review in denying the Petitioner's application for exemption.

6. That on February 8, 1984, the Petitioner appeared at the hearing by its secretary, E. Doyle Hayes, and its treasurer, James Stout. The Respondent appeared at the hearing by its hearing officer, Edward F. Airhart.

7. At the hearing the Petitioner introduced exhibits, including its articles of incorporation, financial statements, a letter from Hayes regarding some of the charita-

ble donations made by the Eagles' national organization, and projected donations the Petitioner made to charities in 1983.

8. At the hearing, Airhart asked Hayes and Stout questions about the Petitioner, its activities, and how it used its property. Hayes and Stout testified about the fraternal benefits a person gained from being a member, but also testified that the lodge building was used by the Petitioner only 2% of the time for charitable functions, while the remaining 98% of the time the lodge building was used for social functions for the benefit and enjoyment of its members. Those social functions included dining, dancing, drinking, bingo, bowling, card playing, and the general relaxation of its members. Hayes and Stout also testified, with respect to the Petitioner's use of the covered pavilion, that it was used 25% of the time by groups who were not charged a fee, while the remaining 75% of the time it was used by Petitioner's members for picnics and the like.

9. At the hearing, Airhart also asked Hayes and Stout whether the property was used for income producing purposes. Hayes and Stout testified that it was, and that the gross income earned from the use of the property for 1983 was approximately $438,000. That the $438,000 gross income the Petitioner earned from the use of the property was derived from the sale of food, $228,000; from the sale of drinks, $200,000; from the playing of bingo, $5,000; and from bowling, $5,000. Of that $438,000 gross annual income earned from the use of its property, Hayes and Stout estimated that the Petitioner contributed $12,160, or 2.8% of Petitioner's gross income, in charitable donations. At the hearing Airhart did not solicit evidence of Petitioner's operating expenses nor did Petitioner offer any such evidence.

10. Hayes and Stout also testified at the hearing that in the prior tax years, the Howard County Board of Review had granted to the Petitioner an exemption from real property taxes, and they further testified that other Eagle lodges in the state had been granted their applications for exemption for the 1983 tax year.

11. That the day following the hearing, Airhart viewed the Petitioner's property. Airhart, however, was unable to gain entrance to the lodge building because it was closed at the time he visited the property.

12. Airhart then reviewed the evidence that had been presented by the Petitioner and made written findings to the Respondent regarding the Petitioner's application for exemption. He found, based on how the Petitioner was using its property, that the Petitioner's use of its property was for non-exempt purposes. Those non-exempt uses of the property were "dining, drinking, dancing, meetings, and the general relaxation of its members." He found, based on the evidence, that the use of the property for charitable purposes was only 2% for the lodge building and 25% for the covered pavilion. He concluded that any charitable use of the property by the Petitioner was only an incidental use and was not a primary or dominant use of the property. Based on his findings, Airhart in his report made the following recommendation to the Respondent:

> Recommend disapproval pursuant to IC 6–1.1–10–16. Buildings and land are not used predominantly for charitable purposes; but instead are used predominantly for the relaxation and benefit of its members.

Airhart recommended 100% disapproval of the exemption application of the Petitioner's real property for the 1983 tax year.

13. Airhart then forwarded the jacket on the case containing all of the information he had collected at the hearing, his reports, notes and recommendations to the Respondent. The Respondent adopted Airhart's recommendation and denied the Petitioner's application for exemption for the 1983 tax year. The Respondent, on February 25, 1985, sent to the Petitioner notice of its decision, entitled "Notice of Action on Review of Application for Exemption." Respondent gave the following reasons why the exemption application was denied:

> Pursuant to IC 6–1.1–10–36, property used or occupied for a purpose other than recited in Sec. 16. Property not set aside or exclusively used for the purpose

recited in Sec. 16. Also, pursuant to IC 6-1-1-10-36.5, property used "in a trade or business not substantially related to the exercise or performance of the organization's exempt purpose."

14. That the Petitioner had been granted a property tax exemption for at least ten (10) consecutive years prior to the application made in 1983.

15. That the Petitioner's applications for exemption in 1984, 1985, and 1986 were likewise granted.

16. That Petitioner's activities and uses of its land and property have been essentially and substantially the same for at least the last fourteen consecutive years, including 1983.

17. That Petitioner then initiated this suit pursuant to IND.CODE 6-1.1-15-5 by filing its complaint on March 19, 1985, against the Respondent requesting the Court review the decision made by the Respondent in denying the Petitioner's application for exemption of its real property from property tax for the 1983 tax year.

### DISCUSSION AND DECISION

It is well settled that this Court's review of the Respondent's determination is limited to a consideration of whether or not there is any substantial evidence to support the finding and if there is, the Court may not disturb it. *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *Dept. of Fin. Insts. v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248.

Contrary to the general rule that the tax laws are to be construed in favor of the taxpayer, exemption statutes are to be strictly construed against the taxpayer and the burden is on the taxpayer to establish his right to an exemption. *Indiana Dept. of State Revenue v. Cave Stone, Inc.* (1983), Ind., 457 N.E.2d 520, 524; *Beasley v. Kwatnez* (1983), Ind.App., 445 N.E.2d 1028, 1030. Hence the burden is on the Petitioner to establish that it is entitled to an exemption.

The Petitioner does not argue that the evidence presented at the hearing does not support the Respondent's determination (if that were the only issue, on the evidence presented, Respondent would prevail herein,) but rather it relies on the theory that the Respondent is estopped from denying the exemption since the exemption was granted for at least 10 years prior to the year in question and for the years since.

Respondent argues that the prior exemptions are irrelevant since under IND.CODE 6-1.1-11-3 [1], an owner is required to apply annually for an exemption and to prove that the use of the property for that particular tax year qualifies for the exemption claimed. Respondent also argues that even if the prior exemptions are not irrelevant, the State cannot be estopped to deny the claim for the tax year 1983. Both parties have at best timidly addressed the issue of estoppel and have either ignored or disregarded the related theory of legislative acquiescence.

Evidence of the actions of assessing officials in prior years is relevant to the questions of whether the current action can be estopped, whether it was arbitrary and capricious, and whether the doctrine of legislative acquiescence is applicable. Petitioner's use of the property has not changed. It can hardly be termed irrelevant then to inquire as to why the actions of assessing officials changed, notwithstanding the provisions of IC 6-1.1-11-3.

### 1. ESTOPPEL

Petitioner acknowledges that "[g]enerally, the public acting through a governmental body 'cannot be estopped by the unlawful acts of public officials.'" *Turner Transp. Inc. v. Indiana Employment Sec. Bd.* (1983), Ind.App., 448 N.E.2d 300, 303 (quoting *Cablevision of Chicago*

---

1. Effective January 1, 1984, IC 6-1.1-11-3 was amended to incorporate a reference to IC 6-1.1-11-3.5, which is a new provision allowing not-for-profit corporations to forego the annual filing of exemption applications under IC 6-1.1-10. Once the exemption is granted, and so long as the use of the property remains the same, the not-for-profit corporation need only file a statement to apply for the exemption every four years and the State Board of Tax Commissioners may review an exemption at any time. IND. CODE 6-1.1-11-3.5 (Supp.1983).

*v. Colby Cable Corp.* (1981), Ind.App., 417 N.E.2d 348, 354). "The reason for this rule is said to be that 'if laches, waiver or estoppel did apply against the public, a dishonest, incompetent or negligent public official could wreck the interests of the public.'" *Cablevision,* 417 N.E.2d at 354 (quoting *State v. Roberts* (1948), 226 Ind. 106, 134, 78 N.E.2d 440, 446 (dissenting opinion)). However the application of estoppel against a governmental body is not absolutely prohibited. *Cablevision,* 417 N.E.2d at 356. In *State ex rel. Agan v. Hendricks Superior Court* (1968), 250 Ind. 675, 678, 235 N.E.2d 458, 460, the Supreme Court held that the government "may be estopped where the necessary elements or grounds were present as where an inconsistent position has been assumed." Working from that point, courts have generally focused on the public interest at stake if an estoppel is to be allowed against the government. *See Cablevision,* 417 N.E.2d at 354–357; *Turner Transp.,* 448 N.E.2d at 303; *Advisory Bd. of Zoning Appeals v. Foundation for Comprehensive Mental Health, Inc.* (1986), Ind.App., 497 N.E.2d 1089, 1092. The Petitioner has neither shown nor argued that an exception to the general rule should be made and that to do so would be in the public interest. The application of estoppel here would put the Respondent in a position of waiving needed state revenue each time a taxpayer could show that an exemption claim had been previously granted. *See Turner Transp.,* 448 N.E.2d at 303.

██ Even if estoppel should be allowed in this case, Petitioner still has not shown that the elements are met. "Estoppel may arise when one party relinquishes a right through words and conduct which induce another to rely upon them to the second party's detriment. Estoppel is based upon representation and reliance...." *Indiana State Highway Commn. v. Pappas* (1976), 169 Ind.App. 611, 349 N.E.2d 808, 813. Petitioner's case for estoppel is flawed insofar as there is no evidence that Petitioner, in reliance on the State's representations, has changed its position to its detriment or injury. While it is true that Petitioner does not enjoy the benefit of the exemption in 1983, this change in position is not the result of justifiable reliance on the State's previous representations.

██ Estoppel and waiver are terms which are often used interchangeably. Petitioner's theory is better suited to a waiver argument, which is the intentional relinquishment of a known right. Whereas the existence of estoppel is determined by the conduct of both parties, the existence of waiver is dependent only on the party making it. *City of Evansville v. Follis* (1974), 161 Ind.App. 396, 315 N.E.2d 724, 728. Petitioner argues, in effect, that by the Respondent's inaction in years prior to 1983, it has waived its right to deny the Petitioner's exemption in 1983. This point, however, was decided by the Indiana Supreme Court in *Walgreen Co. v. Gross Income Tax Division* (1947), 225 Ind. 418, 75 N.E.2d 784. "The taxing authorities of the state ... could not by failing to do their duty, or by any act or failure to act, waive the right and the duty of the state to assess and collect taxes for the years following." *Id.,* 75 N.E.2d at 787.

## 2. LEGISLATIVE ACQUIESCENCE

Petitioner has raised this issue, at best, by implication and Respondent mentions it only in passing. However, the Court is of the view that this issue merits discussion and is the issue upon which the determination of this case rests.

██ The doctrine of legislative acquiescence is a principle of statutory construction by which a court accords an "administrative interpretation" appropriate weight in determining the meaning of an ambiguous or uncertain statute, "especially when the construction or interpretation is long continued and uniform, or contemporaneous with the first workings of the statute...." 2 AM.JUR2D *Administrative Law* § 241 (1962). There are various modes of an "administrative interpretation," including regulations, matters specifically designated "interpretations," interpretative bulletins, rulings and opinions, decisions in cases before the agency, an administrator's statements at congressional

hearings, a letter, an agreement settling a suit, and other actions and procedures. *Id.* § 245. As a general rule, mere inaction does not constitute an agency's "practical construction" of a statute, but there are situations in which an agency's course of inaction could be said to constitute a practice or interpretation. The inaction central to the doctrine is the failure of the legislature to act in face of an administrative interpretation. Such a failure, as the theory goes, is termed an approval by the legislature of the administrative interpretation, since surely the legislature would have acted if it had disapproved. The issue stated in this case is: Did the Respondent for the years prior to 1983 interpret the words "charitable purposes" to include the use of the property of Petitioner as in finding of fact numbers 9 and 13? And if so, does the doctrine of legislative acquiescence prevent a contrary interpretation in 1983? The Court holds that the answer to each question is yes.

It is in light of this background that the following cases should be examined. *Baker v. Compton* (1965), 247 Ind. 39, 211 N.E.2d 162, provides the starting point. In *Baker*, a husband and wife had initiated an adoption proceeding, in which they introduced a consent form executed by the natural mother. The natural mother intervened, claiming that the consent form was invalid. She argued that the statute required a two-step procedure for a proper acknowledgement. However, the form, which had been furnished by an administrative agency, contained instructions which appeared to by-pass the first step of the alleged two-step procedure. Noting that this modified procedure had never been challenged, the court invoked the doctrine of legislative acquiescence. It ruled that this administrative interpretation should prevail, reasoning that

> a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change hav-

ing been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts.

*Id.*, 211 N.E.2d at 164.

The court added that such an interpretation would not be binding if incorrect, but otherwise this interpretation constituted valuable evidence of the meaning of the statute to those most concerned with its administration, and as such, it should be accorded considerable weight in construing the statute.

In *State Board of Tax Commissioners v. Wright* (1966), 139 Ind.App. 370, 215 N.E.2d 57, the doctrine was used in the construction of the precursor to IC 6–1.1–10–16 [2]. The question was whether cabins, which were used to house ministers who were attending church conferences, were being used exclusively for religious purposes. Claims for exemptions had never been questioned in previous years [3]. Thus, the court determined that this was a matter of legislative acquiescence. However, the court also looked to other cases for guidance. in determining that such cabins were being "exclusively used" for exemption purposes. On rehearing, the court clarified what had been intended by its application of the doctrine. The "administrative interpretation" here was not mere inaction on part of the State Board alone, but the "practice" of local assessing officials and local county boards of review, as well as the State Board, in failing to question previous claims for exemptions. This amounted to an "interpretation" of the statute as it applied to these cabins· and since this interpretation was not incorrect, the legislature's failure to alter or amend the statute in face of this interpretation signified its satisfaction with the interpretation and the result thereof. The court did not invoke the doctrine as the sole basis for its decision, but merely used it as an aid in statutory construction. *State Bd. of Tax*

---

**2.** Section 64–201 (Burns' Ind.Stat.Anno., 1961 Repl.).

**3.** Precisely how many years were involved is not clear from the opinion, but the church had

owned the property since 1928, so one assumes the exemptions had gone unquestioned for at least thirty years.

*Commrs. v. Wright* (1966), 139 Ind.App. 370, 217 N.E.2d 596.

The same exemption statute was at issue in *State Board of Tax Commissioners v. Methodist Home for the Aged* (1968), 143 Ind.App. 419, 241 N.E.2d 84, this time as it applied to retirement homes. This was a more conventional use of the doctrine because the administrative interpretation involved was an opinion of the Attorney General. While not bound by that opinion, the court decided that because his opinion was on point and had not been challenged by the legislature for forty-five years, this administrative interpretation should be accorded great weight in construing the statute to include nonprofit retirement homes. Like the court in *Wright,* the *Methodist Home* court did not determine the meaning of the statute solely on the basis of the doctrine. Instead the court considered case law and public policy concerns as well as the opinion of the Attorney General.

As did the court in *Methodist Home,* the court in *State Board of Tax Commissioners v. Adoniram Lodge of Perfection* (1969), 145 Ind.App. 300, 250 N.E.2d 605, found that the opinion of the Attorney General was entitled to "considerable weight" in aiding the court in its interpretation of a statute. In the Attorney General's opinion, the exemption statute at issue (again, the precursor to IC 6–1.1–10–16) was interpreted to include the property of Masonic organizations, so long as it was owned, occupied, operated and used for charitable, educational and/or religious purposes. The court found that the trial court properly applied this law to the facts and concluded that the Masons were entitled to the exemption.

In *State Board of Tax Commissioners v. Warner Press, Inc.* (1969), 145 Ind.App. 20, 248 N.E.2d 405, an agreement between the taxpayer and local assessing officials, the county board of review, and the State Board with regard to the exempt status of particular property, was held to constitute an administrative interpretation. This agreement had been in effect for 11 years before taxpayer's claim to exemption for property used for religious and charitable purposes was denied. Here the trial court concluded that this "administrative interpretation of the exemption statutes, as applied to petitioner's said real and personal property, [was] controlling and binding upon the parties...." *Id.,* 248 N.E.2d at 407. The court on appeal upheld these conclusions, citing *Wright* as dispositive. *Id.,* 248 N.E.2d at 411.

The court applied the doctrine in *Whirlpool Corp. v. State Board of Tax Commissioners* (1975), 167 Ind.App. 216, 338 N.E.2d 501, to uphold an exemption claimed for stored goods under the gross income tax statute. Here the taxpayer had claimed the exemption without incident since 1962. In 1965, the statute was amended and the claim was challenged. After hearings, the State Board ultimately ruled in favor of the taxpayer. From 1966 to 1968, the exemption claim went unchallenged, but in 1969 it was denied again although the statute had not been amended. The taxpayer argued that the *"Board, by its actions* in 1965, 1966, 1967 and 1968 *has acquiesced* in the exemption *and was therefore estopped* to deny it in 1969." *Id.,* 338 N.E.2d at 506 (emphasis added). The court proceeded to discuss the argument in terms of legislative acquiescence. The court ruled that the administrative ruling of 1965 constituted an administrative interpretation, which was "binding and controlling since the exemption statute [had] not been altered ... [and] [t]he legislature therefore must be deemed to have acquiesced...." *Id.,* 338 N.E.2d at 507. Given this construction of the statute, the court held that the Board's denial of the exemption was "arbitrary, capricious, and an abuse of discretion...." *Id.*

The *Whirlpool* court cited the *Warner Press* case as analogous. *Id.* The Court discussed the reasoning of the *Warner Press* court:

Relying in part on the doctrine of *Baker v. Compton,* the Appellate Court [in *Warner Press*] ... upheld the trial court's conclusion that *Board's prior acquiescence* in Warner's exemption was controlling and binding and that since the statute had not been materially altered,

Warner was entitled to the exemption. The Court concluded that Board's action in *Warner* was arbitrary, capricious and an abuse of discretion in light of its prior acquiescence in Warner claiming the exemption.

Id. (emphasis added)

This passage, and other references to the "Board's acquiescence," suggests that the *Whirlpool* court, in its reading of *Warner Press*, focused on the Board's inaction as the basis for legislative acquiescence rather than the agreement between Warner and the assessing authorities. A careful reading of *Warner Press* reveals that the basis for that court's decision was the agreement between the taxpayer and the assessing authorities. The court in *Warner Press* did hold that the Board's action in denying the exemption claim was arbitrary and capricious in light of the Board's prior approval of, or acquiescence in the exemption. The reasoning underlying this holding should be analyzed as follows: 1) the agreement between Warner and the Board constituted an administrative interpretation; 2) the legislature failed to act in face of this administrative interpretation and therefore acquiesced in that interpretation; 3) given that this administrative interpretation represented the law as it should have been applied in the current year, the Board's decision to deny the current exemption claim was arbitrary and capricious. In a like manner, despite the continued references to the "Board's acquiescence," the *Whirlpool* court grounded its holding on the 1965 ruling by the Board, and not the Board's failure to deny the exemption in 1966, 1967, and 1968.

*Whirlpool* paints the doctrine of legislative acquiescence with broad strokes, leaving a slightly distorted picture of the doctrine's actual purpose. Judge Sullivan recognized the danger of transforming the doctrine of legislative acquiescence from a simple tool of statutory construction to a basis for agency default, which would seem to "require an agency to adhere to an erroneous interpretation of the law...." *Indiana Dept. of State Revenue v. General Foods Corp.* (1981) Ind.App., 427 N.E.2d 665, 671. In his concurring opinion, Judge

Sullivan objected to the following language from *Whirlpool:*

The legislature therefore must be deemed to have acquiesced in the exemption and under the guidance of *Baker v. Compton, supra,* such acquiescence is binding and controlling herein.

Id. (quoting *Whirlpool,* 338 N.E.2d at 507).

Finding this view to be "overbroad," he explained:

While the fiction of legislative acquiescence may provide a tool for legal problem solving and have great persuasive effect in the courts, it should not be the only factor considered. In actuality, the doctrine of legislative acquiescence is helpful only when the earlier administrative interpretation was correct. It is not applicable if the earlier interpretation was in error. The seminal Indiana case, *Baker v. Compton,* recognized this:

'Although the interpretation placed upon the statute by an administrative agency of this state may not be binding upon this court if the interpretation is incorrect, such interpretation as has been made and applied in a number of previous adoptions, is entitled to considerable weight....'

*General Foods,* 427 N.E.2d at 671 (quoting *Baker v. Compton,* 211 N.E.2d at 164) (citations omitted).

In light of the previous discussion, *Indianapolis Elks Building Corp. v. State Board of Tax Commissioners* (1969), 145 Ind.App. 522, 251 N.E.2d 673 should be examined. In that case, the court ruled that a fraternal organization was not entitled to an exemption for its property because the facts showed that the property was not actually being used for charitable purposes. The court acknowledged the correctness of the decision in *Trustees of Adoniram L.O.P.,* but distinguished that case by pointing out that even favorable construction of the law must still be applied to the facts of the case. Thus, the court concluded that "[w]hile we accept this principle, the fact remains that the dominant use of the appellant's property

was not charitable. Therefore, notwithstanding the doctrine of legislative acquiescence and/or opinions of our Attorney General, no exemption is allowable." *Id.,* 251 N.E.2d at 684. Underlying this decision were facts very much like those of the case at bar. In the *Elks* case, the court stated:

Both the record and the court's findings of fact plainly exhibit the fact that the property in question is used for drinking, eating, dancing, card games, swimming and general relaxation. These same activities exist at any good country club. The inescapable conclusion is that the dominant and primary purpose of the use of appellant's property is social....

Having stated that appellant's social charity is not that charity which will justify an exemption, we now consider appellant's objective charity, i.e., its support of philanthropic endeavors.

While appellant's dues and social events generate substantial revenues, the court's findings of fact ... disclose that only three percent of appellant's gross income was devoted to charitable contributions. The fact that operating expenses are excessive, or that the lodge is operated at a loss, indicates the need for better financial management rather than a point of legal distinction....

We hold, therefore, that on the record appellant's activities exhibit a use of the property which is not within even the most lenient constitutional definition of charity.

*Id.,* 251 N.E.2d at 682–83.

If that were the last word on the doctrine of legislative acquiescence, and if the exemption for the years since 1983 had not been granted, this Court would follow *Elks,* and the result would be obvious. However since *Whirlpool,* the Indiana Supreme Court has had occasion to invoke and seemingly expand the doctrine of legislative acquiescence. An examination of these cases is needed because they do provide the most current word on the doctrine.

In *State Board of Tax Commissioners v. Carrier Corp.* (1977), 266 Ind. 615, 365 N.E.2d 1385, 1387, the Supreme Court

ruled that "privity to an administrative ruling is [not] required in order to be able to raise a legislative acquiescence argument." In this case, the taxpayer claimed a business personal property exemption for stored goods ready for interstate transhipment. The exemption was allowed in 1969 and 1970, but denied in 1971. Finding the *Whirlpool* case analogous, the Supreme Court restated the taxpayer's argument in *Whirlpool:* "Whirlpool's contention was that the Board by its actions in 1965, 1966, 1967, and 1968 had acquiesced in the exemption and was therefore estopped to deny it in 1969." *Id.* The Court recognized that the Board had decided the issue in Whirlpool's favor in 1965. It quoted from the *Whirlpool* case:

[I]n 1965, the same dispute as in the case at bar was resolved by the Board in favor of Whirlpool. On the basis of the 1965 dispute, Board permitted Whirlpool's exemption in 1966, 1967, and 1968. The legislature therefore must be deemed to have acquiesced in the exemption and under the guidance of *Baker v. Compton, supra,* such acquiescence is binding and controlling herein.

*Id.* (citing *Whirlpool,* 338 N.E.2d at 507).

The Court stated that "the same consideration from the *Whirlpool* case is forthcoming to Carrier in this cause for two reasons." *Id.* First, since there was no authority for the proposition that privity was required to raise a legislative acquiescence argument, no privity was required. This meant that the administrative ruling issued by the Board for Whirlpool in 1965 could be considered an administrative interpretation applicable to the *Carrier* case, since the facts were otherwise identical. Second, because the Board failed to deny Carrier's exemption in the two previous years, it was "clear" that the Board's interpretation of the statute was the same as it had been in the 1965 administrative ruling, and as such, was an indication that "the legislature intended to provide for exemption under the facts stated in this case." *Id.*

The Supreme Court's next application of legislative acquiescence was more conven-

tional. In *Indiana Department of Revenue v. Glendale-Glenbrook Associates* (1981), Ind., 429 N.E.2d 217, the taxpayer sought an exemption under the Gross Income Tax Act. The pertinent statute was amended in 1969, and the taxpayer was notified that they were now subject to the tax. The taxpayer protested and after a hearing, the Department issued a letter of findings which stated that the taxpayer was not subject to the tax. Three years later, the taxpayer was notified that the prior ruling had been overruled. The court decided the case on other grounds, but added that the doctrine was clearly applicable on the basis of the ruling, which constituted an administrative interpretation, followed by a long period of acquiescence by the legislature.

The Supreme Court also encountered the doctrine in *Citizens Action Coalition v. Northern Indiana Public Service Co.* (1985), Ind., 485 N.E.2d 610. In that case, the court was deciding whether or not the Public Service Commission (PSC) had acted contrary to law when it permitted a public utility to amortize the sunk costs of a cancelled nuclear power plant through retail rates. The public utility argued that the PSC had allowed amortization of cancelled and abandoned plants for over seventy years in numerous administrative decisions and since the legislature had never changed the utility statute, there was a strong presumption of legislative acquiescence. The Supreme Court reiterated the basic *Baker* definition of the doctrine, acknowledging that incorrect administrative decisions are not binding and that basically the doctrine is a tool of statutory construction. The Supreme Court declined to find any legislative acquiescence because they found only one administrative ruling actually relevant to the case at bar and found that that case, decided in 1978, was not "sufficient by itself to establish a long-adhered to administrative interpretation." *Id.* at 616, n. 2. The court next stated that "the doctrine of legislative acquiescence is an estoppel doctrine designed to protect those who rely on a long standing administrative interpretation." *Id.*

This presumably was a response to the argument of the utility and its banks, who also argued that it would be unfair if the amortization was disallowed because lenders should be entitled to rely on this long standing administrative practice. The court stated that the administrative ruling cited by the public utility did not "support a principled basis for reliance in light of the unique circumstances that the [plant] cancellation presents." *Id.*

In light of these recent interpretations of the doctrine of legislative acquiescence by the Indiana Supreme Court, and based on the fact that Respondent has allowed the exemption for ten years prior to 1983 and in the years since, the Court holds that the denial of the exemption in 1983 was arbitrary, capricious and an abuse of discretion.

Virtually all of the cases, which form the core of the law of legislative acquiescence, especially the tax cases, involve some overt action by the taxing authority in granting an exemption in the first instance. In the case at bar, the exemption was granted in the years prior to 1983, without any apparent overt action taken by Respondent (at least on the evidence before the Court). However IC 6-1.1-11-8 places a duty on the Respondent to review those applications for exemption which were approved by the local authorities. This statute, by its terms, mandates some affirmative action by the Respondent; upon approval by local authorities, action by Respondent is presumed. *See State Bd. of Tax Commrs. v. Wright*, (1966), 139 Ind.App. 370, 215 N.E.2d 57, *reh'g denied*, 139 Ind.App. 370, 217 N.E.2d 596, 597; IC 6-1.1-11-8.

This Court is mindful of the concerns expressed by Judge Sullivan in the *General Foods* case as regards the ability of the taxing authority to change its mind and its standards. If Respondent had announced guidelines or other standards which would operate prospectively, even if the result of the application of such was a denial of the exemption, or if the exemption had not

been granted since 1983, a different result might have been reached herein [4].

## CONCLUSION

The Court for the reasons above stated now finds for the Petitioner. The determination of the Respondent is reversed and this cause is remanded to the Respondent with instructions to grant Petitioners application and property tax exemption for year 1983.

**4.** While not necessary for a determination of this case, the Court, upon review of the evidence presented at the administrative hearing, believes it should stress the desirability and importance of the taxpayer treating a hearing (of the Respondent) almost as if it was a full-fledged judicial trial and presenting all the evidence which may support a claim, rather than treating it as a casual meeting where less than complete information and evidence is presented. The bar of this state and all taxpayers need to be well aware of the standard of review applicable to determinations of the State Board of Tax Commissioners and be aware that they cannot wait until the matter gets to this Court before they get out the "big guns."