**JOHNSON COUNTY PLAN COMMISSION, Appellant–Defendant,**

v.

**Charles TINKLE, II and Charles Tinkle, III, Appellees–Plaintiff.**

No. 41A04–0010–CV–425.

Court of Appeals of Indiana.

May 29, 2001.

Jennifer Auger, Jones Hoffman & Admire, Franklin, IN, Attorney for Appellant.

Joe Van Valer, Van Valer Law Firm, Greenwood, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Since 1976, a Johnson County subdivision ordinance has prohibited the division of tracts of ten acres or more into three or more lots. The ordinance was not enforced until 1999 when Charles Tinkle II and Charles Tinkle III ("the Tinkles") submitted their application for plat approval of a subdivision, which was denied. The trial court held that the Johnson County Plan Commission ("the Commission") was collaterally estopped from enforcing the ordinance against the Tinkles. We reverse.

### Facts and Procedural History

Although they were aware of a 1976 ordinance that prohibited the division of tracts of ten acres or more into three or more lots, the Tinkles purchased a ten-acre piece of land with the intention of creating a subdivision. R. at 17, 73. At the time of their application for plat approval in 1999, the Commission had approved thirty-two subdivision plats that contravened the 1976 ordinance. However, the Commission denied the Tinkles' request based on the 1976 ordinance and traffic safety concerns.

On March 24, 2000, the Tinkles filed a petition for writ of certiorari in Johnson County Superior Court. On August 22, 2000, the trial court granted the writ of

certiorari, reasoning that the Commission was "estopped from denying the plat based on previous actions and the [Tinkles'] reliance on such." R. at 71. The Commission appeals.

### Discussion and Decision

■ As a preliminary matter, we must address the Tinkles' contention that we are precluded from deciding this case because the Commission failed to include the 1976 ordinance in the record of proceedings.[1] The Tinkles rely on *Rush County Bd. of Zoning Appeals v. Ryse*, 686 N.E.2d 186 (Ind.Ct.App.1997), in which a zoning board appealed the trial court's grant of a special use exception. On appeal, the zoning board did not include the relevant ordinance in the record, and this Court held that it was "unable to review the *interpretation* of an ordinance which is not included in the record." *Id.* at 187 (emphasis added). Here, we are not reviewing the interpretation of the ordinance, as all parties agree that, as written, the 1976 ordinance applies to the Tinkles' subdivision plat plan. Thus, unlike *Ryse*, the subdivision control ordinance is of tangential, if any, relevance to the issues presented in this appeal. Old Appellate Rule 7.2(B), which governs this appeal filed before January 1, 2001, states that "[n]either party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted upon the appeal." Here, the ordinance is not needed to review the issues presented by the Commission, and thus the Tinkles' assertion of waiver fails.

■ Turning to the merits, the Commission contends that the trial court erred in applying the doctrine of equitable estoppel, which can be applied against a governmental entity only when its application would be in the public's interest. The Tinkles respond that "[i]t would be harmful to the public interest to permit the Plan Commission to arbitrarily and suddenly change its interpretation of the subdivision control ordinance without prior notice to the public." Brief of Appellees at 6. The trial court found that the Commission was "estopped from denying the Petitioners' proposal based on their previous actions and failure to notify the public regarding the change in practice. [T]he doctrine of equitable estoppel does apply to the specific facts of this case." R. at 73. We disagree.

■ The doctrine of equitable estoppel requires three elements: "(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Hannon v. Metropolitan Development Comm'n*, 685 N.E.2d 1075, 1080–81 (Ind.Ct.App.1997). The Tinkles acknowledge the general rule that a governmental entity cannot be estopped by the unlawful acts of public officials. *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348, 354 (Ind.Ct.App.1981). However, this prohibition is not absolute. *Id.* at 356. This court has recognized equitable estoppel

---

1. The Tinkles caption their argument as follows: "Whether the absence of the subdivision control ordinance in the trial court's record prevents a review of the zoning issues raised in this appeal." Brief of Appellees at 8. Buried in over two pages of argument, however, they point out that "[t]he Plan Commission's secretary failed to certify the Supplemental Transcript as required by the Writ." *Id.* at 10. They suggest that this non-certification "hampers appellate review," but make no cogent claim of error, let alone reversible error. In any event, the Tinkles did not object to the Supplemental Transcript in the trial court, where the error could have been easily corrected. The failure to object in the trial court results in forfeiture of any claim of error on appeal. *Neese v. Kelley*, 705 N.E.2d 1047, 1050 (Ind.Ct.App.1999).

can be applied against a governmental entity when "the public interest" will be threatened. *Advisory Board of Zoning Appeals of Hammond v. Foundation for Comprehensive Mental Health, Inc.,* 497 N.E.2d 1089, 1092 (Ind.Ct.App.1986); *see also Cablevision of Chicago,* 417 N.E.2d at 357. Here, the Tinkles' claim fails because they have neither (1) satisfied the elements of equitable estoppel nor (2) demonstrated a threat to the public interest.

■ "Estoppel cannot be applied when the facts are equally known or accessible to both parties." *Comprehensive Mental Health,* 497 N.E.2d at 1093. The Tinkles, as property owners, were charged with knowledge of the applicable subdivision ordinance, *Board of Zoning Appeals v. Leisz,* 702 N.E.2d 1026, 1030 (Ind.1998), and in fact acknowledge that they were aware of its existence and that, if enforced, it would bar their proposed development. Because the 1976 ordinance was not only accessible but known to the Tinkles, their estoppel claim must fail. *Cf. Hannon,* 685 N.E.2d at 1081.

■ Even if the Tinkles could satisfy the elements of equitable estoppel, they would still have to establish that the application of the doctrine, which generally cannot be applied against a governmental entity, is in the public interest. They point to *Advisory Board of Zoning Appeals of Hammond v. Foundation for Comprehensive Mental Health, Inc.,* 497 N.E.2d 1089 (Ind.Ct.App.1986) and *Cablevision of Chicago v. Colby Cable Corp.,* 417 N.E.2d 348 (Ind.Ct.App.1981), as support.

In *Comprehensive Mental Health,* 497 N.E.2d at 1089, a foundation purchased property to use as a temporary residence for teenage children in need of services. The foundation obtained an improvement location permit and two building permits for the property and then proceeded to make substantial improvements of more than $150,000. After these improvements, the foundation applied for a certificate of occupancy and compliance, which was denied. The foundation then filed a petition for writ of certiorari. The trial court granted the petition, reasoning that the city was estopped from denying the issuance of the certificate of occupancy and compliance based on its issuance of the improvement location and building permits. *Id.* at 1091. We affirmed that decision on appeal, noting that the city had knowledge of the foundation's plans for the use of the premises and issued permits approving the building plans. *Id.* at 1092–93. We also rejected the city's contention that the foundation made its improvements in contravention of a zoning ordinance's permitted use.

> The city's issuance of the permits affirmed the foundation's belief that the use fit the definition contained in the ordinance. Only the city could have made a contrary determination. Its failure to do so resulted in the foundation expending in excess of $151,000 for renovation and upkeep of the property. Under the circumstances, the trial court properly concluded that the city was estopped to deny the foundation a certificate of occupancy and compliance.

*Id.* at 1093.

In *Cablevision of Chicago,* 417 N.E.2d at 348, the city of Hammond adopted a franchise ordinance prepared by Colby Cable Corporation in 1971. Colby, which later became United Cable Television, spent over $3,000,000 in the next decade in reliance on the ordinance and its right to provide cable services to the city. In 1979, Cablevision of Chicago approached the city about obtaining a cable franchise, was informed of the Colby franchise, but had "severe questions" about the validity of the Colby franchise. *Id.* at 351. Cablevision sought an order declaring the 1971 fran-

chise ordinance invalid and an injunction. The trial court denied the injunction, and we affirmed on appeal. We noted that "invalidating United's franchise would not only work a great hardship upon United, but might delay further the public's access to cable television in the Hammond area and the accompanying 4% franchise fee to the City." *Id.* at 357.

Neither of these cases is controlling here. Unlike *Comprehensive Mental Health*, the Tinkles had no contact with the Commission prior to their purchase of land and were given no assurances that their proposed subdivision would be approved. Rather, they clearly knew that their proposed subdivision plat violated an ordinance, albeit one that had not previously been enforced. The Commission did nothing affirmatively, and certainly approved no permits, to signal eventual approval of the Tinkles' plan. Finally, this case is unlike *Cablevision of Chicago*, where this court refused to invalidate the challenged franchise ordinance, in part, because doing so would delay the public's access to cable television and result in a loss of a 4% franchise fee by the city. 417 N.E.2d at 357. Unlike *Cablevision of Chicago*, the application of equitable estoppel in this case would give no benefit to the public, but rather would benefit only the Tinkles.

 As this court observed in *Cablevision of Chicago*, if estoppel were applied against a governmental official, "a dishonest, incompetent or negligent public official could wreck the interests of the public." *Id.* at 354 (quoting *State v. Roberts*, 226 Ind. 106, 134, 78 N.E.2d 440, 446 (1948) (Emmert, C.J., dissenting)). The citizens of Johnson County, through their elected officials enacted an ordinance to prevent land "from being completely taken over by small lots and encroached upon by urban sprawl." R. at 23.[2] Although the Tinkles suggest that the "public interest" is threatened by allowing the Commission "to arbitrarily change its practice and procedure without prior notice to the public," Brief of Appellees at 16, it is clear that the only interest threatened here belongs to the Tinkles. Applying equitable estoppel against the Commission would give no benefit to the public but rather would cause a direct harm by allowing the creation of yet another subdivision.[3]

### Conclusion

For all of these reasons, the judgment of the trial court is reversed and this case is remanded with instructions to deny the Tinkles' Petition for Writ of Certiorari.

Reversed and remanded.

BAILEY, J., and BAKER, J., concur.

2. This statement was made at the Plan Commission hearing by a remonstrator who purported to be quoting from the 1976 ordinance. Neither party has graced us with the ordinance, so we cannot verify the accuracy of the quotation. Regardless, it is clear that limiting the number of small lots and deleterious effects of "urban sprawl" are purposes behind zoning ordinances such as the one at issue in this case.

3. The Tinkles also assert that the trial court's decision may be affirmed based on the doctrine of laches. However, this Court has held that the doctrine of laches is never applicable to a municipality in enforcing its ordinances because of public policy interests. *Hannon*, 685 N.E.2d at 1080. In a footnote, however, the court in *Hannon* considered whether it should "carve out an extreme circumstance exception to this well established rule" similar to the public interest exception to the doctrine of equitable estoppel. *Id.* at 1080 n. 7. The court then addressed and rejected the property owners' claim simultaneously with its equitable estoppel claim. *Id.* at 1080 n. 8. Thus, assuming that laches can apply to municipalities in extreme circumstances, those circumstances are not present here for the same reasons as explained above in rejecting the Tinkles' assertion of a "public interest" in the equitable estoppel context.