**BROWN COUNTY INDIANA, Brown County Area Plan Commission and Brown County Area Board of Zoning Appeals, Appellants–Plaintiffs,**

v.

**John W. BOOE, Brown County Sawmill, Inc., John Weaver Booe Revocable Living Trust and Beckemeyer's Custom Millwork, Inc., Appellees–Defendants.**

No. 07A01–0206–CV–211.

Court of Appeals of Indiana.

May 21, 2003.

David B. Schilling, Bloomington, IN, Attorney for Appellants.

James T. Roberts, Nashville, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Brown County, the Brown County Area Plan Commission, and the Brown County Area Board of Zoning Appeals (collectively "Brown County") filed a complaint against John Booe, Brown County Sawmill, Inc., the John Weaver Booe Revocable Living Trust (collectively "Booe"), and Beckemeyer's Custom Millwork Inc. ("Beckemeyer") in Brown Circuit Court. In the complaint, Brown County alleged that Booe was operating a sawmill in a manner that violated both the zoning ordinance and the sawmill special exception granted to Booe in 1976. The complaint also alleged that Beckemeyer's custom millwork use of a tract of land purchased from Booe was not a use permitted by the zoning ordinance or by the 1976 sawmill special exception. In addition to a request for civil penalties, Brown County requested that the trial court enjoin Booe and Beckemeyer from continuing to use the property for industrial purposes.

Both Booe and Beckemeyer filed answers to the complaint asserting several affirmative defenses including estoppel and laches. Beckemeyer also filed a counterclaim for declaratory judgment requesting the trial court to issue a judgment declaring that his property is zoned industrial as defined by the zoning ordinance. A trial was held, and the trial court issued special findings of fact and conclusions of law finding in part that 1) Booe's use of the property as a sawmill has not changed since the special exception was granted; 2) Brown County is estopped from challenging Booe's industrial use of his property; 3) Brown County is estopped to deny Beckemeyer's use of his property for an industrial purpose; and 4) Beckemeyer was entitled to a declaratory judgment that his property is zoned industrial.

Brown County appeals and raises several issues, which we consolidate and restate as:

I. Whether the trial court erred when it found that Brown County was estopped from challenging Booe's and Beckemeyer's industrial uses of their property;

II. Whether Brown County's approval of the Heritage Hills subdivision plat constituted a "de facto" rezoning of Beckemeyer's property;

III. Whether the trial court erred when it denied Brown County's Trial Rule 15(B) motion; and,

IV. Whether the trial court erred when it failed to grant Brown County relief on the issues it attempted to raise by filing the Trial Rule 15(B) motion.[1]

Finding that Brown County is estopped from challenging Booe's and Beckemeyer's current industrial uses of their property, but that approval of the subdivision plat did not constitute "de facto" rezoning of Beckemeyer's property, we affirm in part and reverse in part.[2]

**Facts and Procedural History**

Brown County adopted its zoning ordinance, including zoning maps, in 1965 and readopted it in 1989. The ordinance divided the unincorporated areas of Brown County into districts with differing zoning

designations including industrial, forest reserve ("FR"), and residential 2 ("R–2"). Pursuant to the ordinance, any property located within 300 feet of a county road is zoned R–2. Also, under the ordinance, special exception uses may be granted subject to the primary use table, which identifies the permitted uses in each zoning district. With the exception of a radio or television tower, no industrial uses are permitted in an R–2 district; however, several industrial uses are allowed in FR districts. Ex. Vol., Plaintiff's Ex. B p. 14.

Prior to 1974, Booe purchased property in Gnaw Bone, Brown County, Indiana. In 1974, Booe began to operate a sawmill on the property. That year he applied for a "special exception to locate and operate a saw mill in a Forest Rec[reation] district." Ex. Vol., Plaintiff's Ex. K. The Board of Zoning Appeals ("BZA") denied Booe's application for a special exception because of the "road condition & residential area." Ex. Vol., Plaintiff's Ex. L. One year later in 1975, Booe again applied for a special exception to operate a sawmill. Ex. Vol., Plaintiff's Ex. P. On the hand drawn map attached to the application, Booe noted that the sawmill was located 400 feet from Brown Hill Road and adjacent to a private road. *Id.* Although several landowners opposed the application, the Plan Commission recommended to the BZA that they grant the special exception. Ex. Vol.,

1. The issues outside of the pleadings that the County attempted to raise by filing the Trial Rule 15(B) motion were 1) whether the County's action in granting the sawmill special exception was ultra vires and void; 2) whether Booe had established a light industrial use of his property, which was separate and distinct from a general industrial sawmill use, in violation of the zoning ordinance; 3) whether Beckemeyer had established a general industrial use of his property, which was unrelated to Booe's sawmill use, in violation of the zoning ordinance; and 4) whether Booe and

Beckemeyer have established an industrial park in a Residential 2 district in violation of the zoning ordinance. These issues and the issue of whether the trial court erred when it denied the Trial Rule 15(B) motion are mooted by our discussion and decision concerning Booe's and Beckemeyer's estoppel defenses.

2. We note that today we also hand down our decision in *Story Bed & Breakfast, LLP v. Brown County Area Plan Commission, et al.,* 789 N.E.2d 13 (Ind.Ct.App.2003) concerning Brown County's land use practice and procedure.

Plaintiff's Ex. S. However, the BZA denied the application. *Id.* In 1976, Booe once again applied for a special exception, now for the third time. This third application was also opposed by landowners in the area. At the hearing on his application, Booe admitted that he had been operating the sawmill illegally and indicated that the sawmill was located 418 feet from Brown Hill Road. Ex. Vol., Plaintiff's Ex. U. The BZA granted his application for a special exception on August 24, 1976. *Id.*

In 1994, Booe decided to subdivide his property and submitted a primary plat to the Plan Commission. The subdivision, known as the "North of Gnaw Bone subdivision," contained "Tract I-1," a three acre tract, and a note on the plat indicated that Tract I-1 "is an industrial zoned tract." Ex. Vol., Defendant's Ex. 2. Booe's sawmill is located on this tract. *Id.* The Plan Commission gave final approval of the plat in 1995.

In 1998, Booe submitted an application to vacate the previous subdivision plat and replat, naming the subdivision "Heritage Hills." After submitting his primary plat, Booe received a letter from the Plan Commission requesting several changes to the plat including: 1) "Relocate east line on Tract # 5 to accommodate County Road 169;" 2) "Relocate east line on Tract # 6 to accommodate County Road 169 and the industrial building; making Tract # 6 residential;" and 3) "dedicate County Road 169." Ex. Vol., Plaintiff's Ex. EE.

Booe made the changes to the plat requested by the Plan Commission and it was approved. The approved plat contains three tracts, I-1, I-1A, and I-1B, which were noted as being industrial zoned tracts. Tract I-1A is situated between tracts 6 and 7. Ex. Vol., Plaintiff's Ex. I. The plat also notes that the "approximate location of Public Road # 169 is over 'Aaron Drive' as easement labeled L, M, N."

*Id.* The plat was recorded on February 17, 1998.

On March 31, 1999, Booe sold Tract I-1A to Beckemeyer. At the time of the sale a large pole barn was situated on the property. Ex. Vol., Defendant's Ex. 4. In the real estate listing, the pole barn was described as a "[l]ight industrial 30x110 pole barn with concrete floor on 1 acre. 400 amp service (3 phase)." *Id.* Prior to purchasing the tract, Beckemeyer reviewed the recorded Heritage Hills subdivision plat, which described the tract as having industrial zoning, and noted that Booe operated a sawmill on another "industrial" tract in the subdivision. Also, Beckemeyer discovered that Tract I-1A was taxed as a secondary commercial/industrial land tract. Before he bought the tract, Beckemeyer made an inquiry regarding the sawmill special exception and received a letter from an employee of the Plan Commission, Dan Harden. That letter provides: "The special exception granted for sawmill in FR zoning, is granted for the property not the owners as per B.C. zoning ordinance and state statutes. This also allows woodworking in this and any zoning district. This property was given 'FR' zoning in error, the zoning is R-2." Appellant's App. p. 50. After he purchased the property, Beckemeyer began to store cars, building materials, and construction equipment on it.

At the Plan Commission meeting on February 24, 2000, a resident of the Heritage Hills subdivision, represented her concern to the Commission that Tract I-1A "be restricted to the number of businesses and type of businesses." Ex. Vol., Plaintiff's Ex. MM. Attorney Dave Schilling informed the Commission that the property was never rezoned industrial and indicated that when the property was subdivided, the intended use of the property had changed, and therefore, Booe should

be required to apply for a new special exception. *Id.* Schilling also stated that the special exception was granted for a sawmill, but Booe's sawmill operates now as a manufacturing mill, which was not permitted by the special exception. *Id.* Thereafter, the Commission sent a letter to Booe indicating that his present use of the sawmill property was in violation of the zoning ordinance, and Booe should apply for all required approvals to bring the property into compliance by May 3, 2000. Ex. Vol., Plaintiff's Ex. SS. Booe did not file any such application.

On August 15, 2000, Brown County filed a complaint against Booe and Beckemeyer requesting preliminary and permanent injunctions, declaratory judgment, civil penalties, and damages. In the complaint, Brown County alleged that Booe has operated a sawmill on the property in a manner that violates the zoning ordinance and the 1976 sawmill special exception, or in the alternative that Booe has changed the nature and use of the property subject to the 1976 special sawmill exception, which under the zoning ordinance would require a new or amended exception, which Booe has not sought; therefore, Booe's use of the property violates the zoning ordinance and the sawmill special exception. Appellant's App. pp. 18–34.

The complaint also alleged that when he subdivided the property subject to the sawmill special exception, Booe was required to obtain a new or amended special exception, which he failed to do in violation of the zoning ordinance. Finally, the complaint alleged that Beckemeyer had established a custom millwork business on the tract of property he purchased from Booe, which is an industrial use, but that property is located within an R–2 zoning district; therefore, Beckemeyer was operating the millwork business in violation of the zoning ordinance.

Booe and Beckemeyer filed answers to the complaint, in which both raised several affirmative defenses including estoppel and laches. Beckemeyer also requested a declaratory judgment that Tract I–1A is zoned industrial as defined by the zoning ordinance.

Trial commenced on January 23, 2002, and Brown County requested special findings of fact and conclusions of law. At trial, Brown County argued that the property on which the Booe sawmill is located is zoned R–2 because it is within 300 feet of County Road 169; therefore, pursuant to the zoning ordinance, industrial uses are not permitted on the property. It also argued that Booe no longer uses the property as a sawmill, but to do woodworking and to manufacture flooring and custom moldings. Booe testified that prior to the date that his 1998 subdivision plat was approved, he had not known that what he believed to be an easement running through his property was actually County Road 169. Tr. p. 94. Booe also stated that Brown County has purchased building materials from the sawmill, and that several members of the Plan Commission have been on the sawmill property and have observed its operation. Tr. pp. 100–01. Roger Beckemeyer testified that he formed Beckemeyer's Custom Millwork as a holding company, and he has never used Tract I–1A for custom millwork, but merely for storing equipment, building materials, and cars. Tr. pp. 112, 118–20.

On April 22, 2002, the trial court issued its findings of fact and conclusions of law. The trial court found that 1) the 1976 sawmill special exception was valid and Brown County was estopped from revoking it; 2) Booe's use of the property as a sawmill has not changed since the special exception was granted; 3) Brown County is estopped from challenging Booe's industrial use of two tracts of his subdivided

property; 4) Booe has made substantial expenditures in improving his property; 5) Brown County did not meet its burden of proving that Beckemeyer has or is using his property for an industrial purpose, and therefore, there is no ordinance violation; 6) Brown County is estopped to deny Beckemeyer's use of his property for an industrial purpose; and 7) Beckemeyer was entitled to a declaratory judgment that his property is zoned industrial. Appellant's App. pp. 14–16. Brown County now appeals. Additional facts will be provided as necessary.

### Standard of Review

Brown County requested special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), and our standard of review is therefore two-tiered: we determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Indianapolis Ind. Aamco Dealers Adver. Pool v. Anderson,* 746 N.E.2d 383, 386 (Ind.Ct.App.2001). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Culley v. McFadden Lake Corp.,* 674 N.E.2d 208, 211 (Ind.Ct.App.1996). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Carroll v. J.J.B. Hilliard, W.L. Lyons, Inc.,* 738 N.E.2d 1069, 1075 (Ind.Ct.App. 2000), *trans. denied.* We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reasonable inferences to be drawn there-

from. *Anderson,* 746 N.E.2d at 386; *Gunderson v. Rondinelli,* 677 N.E.2d 601, 603 (Ind.Ct.App.1997).

### I. The Brown County Zoning Ordinance

Pursuant to the Brown County zoning ordinance, unincorporated areas of the county are divided into districts. A Forest Reserve District ("FR") is defined as "land that is for the most part rough terrain and where there is extensive public ownership of forest lands." Ex. Vol., Plaintiff's Ex. B, Brown County Zoning Ordinance, § 2.1, p. 9.[3] A Secondary Residential District ("R–2") "include[s] areas that have been subject to urbanization on a scattered pattern, principally along County Highways." *Id.* Under the zoning ordinance, any land adjacent to a county highway within 300 feet of the highway centerline is zoned R–2. Brown County Zoning Ordinance, § 2.5, pp. 11–12. The boundaries of those districts are shown in the Zone Map, which is incorporated into the ordinance. Brown County Zoning Ordinance, § 2.2, p. 10.

The BZA has the authority to grant a special exception for use in a district if it finds that:

(1) section 3.1 authorizes a special exception for that use in that district;

(2) the requirements for special exceptions prescribed by this ordinance will be met; and

(3) granting the exception will not subvert the general purposes served by this ordinance and will not materially and permanently injure other property or uses in the same district and vicinity.

---

**3.** All citations to the Brown County Zoning Ordinance are to the Ordinance adopted in 1989. The Ordinance was originally adopted in 1965, and the 1965 Ordinance was in effect when Booe's special exception was granted. Those sections of the Ordinance addressed in this appeal remained substantially unchanged when the Ordinance was readopted in 1989.

Brown County Zoning Ordinance, § 3.4, p. 19. With the exception of a radio or television tower, no industrial uses are permitted in districts zoned R–2. Brown County Zoning Ordinance, § 3.1, Primary Use Table, p. 14. However, light and general industrial uses are permitted in FR districts, but only if a special exception is granted for such use. *Id.*

## II. County Road 169

Central to Brown County's argument is the fact that County Road 169 runs through the Heritage Hills subdivision. Pursuant to the zoning ordinance, any property that is situated within 300 feet of the centerline of that road is zoned R–2. At trial, Brown County submitted several maps of the county including the zoning map, a 1976 federal aid system map, and a public roads map. Although it does not appear on every map, County Road 169 does appear on the federal aid system map and the public roads map. County Road 169 is not labeled on the zoning map, but by comparing the zoning map to other county maps submitted at trial, we note that there is a road on the zoning map that is most likely County Road 169.

At trial, Brown County also submitted exhibit H, which contains Findings of Fact and Conclusions of Law dated November 9, 1978, in the case *Lindemann v. Fleming, et al.* At the time of the lawsuit, Woodrow Fleming owned the property directly to the north of Booe's, and the Lindemanns owned two parcels of property to the north and east of Fleming's property. The lawsuit was brought to establish the existence and boundaries of County Road 169. In its findings, the trial court found that County Road 169 begins approximately .5 miles along Brown Hill Road from State Road 46 and runs in a generally northerly direction. A 1980 plat showing the location of County Road 169, which was ordered by the judge in that case, shows the road running through the Booe property. The surveyor noted "on the Booe property there appears to be a barn several years old and a newer sawmill building that would encroach on a two rods wide right-of-way." Ex. Vol., Plaintiff's Ex. H.

## III. Equitable Estoppel

Generally, "government entities are not subject to equitable estoppel." *Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34, 39 (Ind.2001). However, in certain circumstances application of estoppel of government entities is appropriate. *Id.* "Specifically, estoppel may be appropriate where the party asserting estoppel has detrimentally relied on the governmental entity's affirmative assertion or on its silence where there was a duty to speak." *Id.* (citations omitted). A party asserting an estoppel defense must prove its "1) lack of knowledge and of the means of knowledge as to the facts in question, 2) reliance upon the conduct of the party estopped, and 3) action based thereon of such a character as to change his position prejudicially." *U.S. Outdoor Adver. Co., Inc. v. Ind. Dep't of Transp.,* 714 N.E.2d 1244, 1259 (Ind.Ct.App.1999), *trans. denied* (citation omitted). Both Booe and Beckemeyer raised the affirmative defense of estoppel, and the trial court found that Brown County was estopped 1) from revoking the sawmill special exception; 2) from challenging Booe's industrial use of his property; and 3) to deny Beckemeyer the use of his property for an industrial purpose.

In *Equicor,* the Westfield–Washington Township Plan Commission denied approval of Equicor's plat for a cluster housing development after Equicor made all changes to the plat that were recommended by the Subdivision Committee. 758 N.E.2d at 35. In denying the plat, although it had never notified Equicor of

any alleged parking deficiency, the Plan Commission found that Equicor failed to comply with the requirement that it designate two "on-site" and one-half "off-site" parking spaces, excluding garages and carports, for each one to three bedroom unit. *Id.* While the plat did not list the number and location of the parking spaces, Equicor argued that the plat showed two on-site spaces in the driveway of each unit and curbside parking adequate to meet the one-half space off-site requirement. *Id.*

Noting that while the Plan Commission suggested other changes to the plat, it was silent as to any parking issue, our supreme court determined "Equicor thus relied on the Plan Commission's silence by proceeding in the reasonable belief that the plat would be approved[.]" *Id.* at 39. In determining that the Plan Commission was estopped from asserting the parking deficiency as a reason for disapproval of Equicor's plat, the court stated:

> We are dealing here with a formal defect—failure to designate the spaces. There is no claim that the project is substantively flawed, and the Commission does not assert that the project in fact has less parking than required. As Equicor points out, the plat itself reveals driveways ("on-site") and curbside spaces ("off-site") that are apparently in compliance with the requirement of two on-site and one-half off-site spaces per unit. Raising a formal defect such as failure to designate these visible, if undesignated, spaces at the last moment permits agencies to fumble endlessly with proposals that are entirely lawful. Under these circumstances, the Plan Commission's failure to object to the undesignated spaces resulted in Equicor's detrimental reliance thereon and, therefore, estoppel is appropriate in this case.

*Id.* at 39–40. Noting that Equicor tendered documents to and appeared before the Plan Commission on several occasions, the court held that "the Plan Commission had ample opportunity to point out any deficiency in the designation of parking, and Equicor reasonably relied on the absence of any parking issue in processing its proposal;" therefore, "the Commission was estopped from asserting this deficiency as the reason for its disapproval of Equicor's plat." *Id.* at 40.

In contrast, in *Johnson County Plan Commission v. Tinkle*, 748 N.E.2d 417 (Ind.Ct.App.2001), our court rejected Tinkle's argument that the Johnson County Plan Commission was estopped from denying their application for plat approval. In 1976, Johnson County enacted an ordinance that prohibited the division of tracts of ten acres or more into three or more lots. *Id.* at 418. Tinkle was aware of the ordinance but purchased a ten-acre parcel of land with the intent of creating a subdivision. *Id.* Prior to Tinkle's application for primary plat approval, the Plan Commission had approved thirty-two subdivision plats that contravened the 1976 ordinance. *Id.* The trial court found that the Commission was estopped from denying Tinkle's proposal because it had previously approved subdivision plats even though they violated the ordinance. *Id.* at 419. Our court disagreed and held "[b]ecause the 1976 ordinance was not only accessible but known to the Tinkles, their estoppel claim must fail." *Id.* at 420. Further, we noted that the denial of Tinkle's application for plat approval did not threaten any public interests, but only those interests belonging to Tinkle. *Id.* at 421.

A. *Whether Brown County was estopped from challenging Booe's industrial use of his property*

■ Brown County argues that the trial court erred when the court determined that it was estopped from challenging Booe's industrial use of his property. Spe-

cifically, Brown County contends that as evidenced by his three applications for special exceptions, Booe was well aware of the zoning ordinance. It also argues that Booe failed to demonstrate that he lacked knowledge of or means of knowledge of the public records establishing the existence and location of County Road 169.

At trial, Booe was asked how long County Road 169 had been a road. He responded:

> I have never heard of one sixty nine until the prior date before the . . . the plat had been signed. That's ah, Heritage Hills plat. Now it did not show up on my personal deed of the . . . the original farm ah, I was aware to a lawsuit that was constructed back prior years from a neighbor behind us that had a . . . a fifteen foot easement, legal easement, it was granted by a Judge and that we had a problem with this going through property. We had to show it dedicated on the plat as an easement through the . . . through the mill property.

Tr. p. 95.

Booe's 1975 application for a special exception contained a hand drawn map of the property at issue, which denoted the road running along the side of the sawmill as a "private road." Booe's testimony and his hand drawn map of his property are evidence of his belief that County Road 169 was merely an easement. The substance of the aforementioned 1978 lawsuit indicates apparent confusion as to the existence and location of County Road 169. For all these reasons, Booe's belief that County Road 169 was merely an easement at the time he was granted the special sawmill exception in 1976 was not unreasonable.

Although the 1978 lawsuit established the location of County Road 169, Booe, who was not a party to the lawsuit and who had only limited knowledge of the lawsuit, continued to believe that the road was an easement as is reflected on his North of Gnaw Bone subdivision plat. Later, in 1995, the Plan Commission approved Booe's North of Gnaw Bone plat, which included the notation that Tract I–1 was zoned industrial, without questioning the lack of dedication of County Road 169. The Plan Commission asked Booe to dedicate County Road 169 on his 1998 Heritage Hills Subdivision plat, which he did, noting that the "approximate location of Public Road # 169 is over 'Aaron Drive' as easement labeled L, M, N." Ex. Vol., Plaintiff's Ex. I. Also, prior to final approval of the plat, the Plan Commission asked Booe to redraw the boundaries of Tract # 6 "to accommodate County Road 169 and the industrial building; making Tract # 6 residential," which Booe did. Ex. Vol., Plaintiff's Ex. EE. Therefore, in reviewing the plat prior to approving it, the Plan Commissioners must have noted the proximity of County Road 169 to Tracts I–1, I–1A, and I–1B, yet they approved the plat, which contained the notation that those tracts were zoned industrial.

As in *Tinkle,* there was evidence presented at trial that Booe had knowledge of the zoning ordinance, and therefore, had knowledge that any property within 300 feet of the centerline of a county road was zoned R–2, a district in which general and light industrial uses are not permitted. However, Brown County failed to establish that Booe was aware of the location and existence of County Road 169, until he was informed that he must dedicate it on his Heritage Hills subdivision plat.[4] The Plan Commission was aware of the location of County Road 169 at the time that both of Booe's plats were submitted, the first for the North of Gnaw Bone subdivision and

---

4. As noted previously, maps of the area are very vague, at best, concerning the exact loca-tion of County Road 169.

later, for the Heritage Hills subdivision; and the Commission approved those plats, which contained tracts noted as industrial in close proximity to County Road 169. Further, since 1974, several Commissioners and representatives of the county have observed the operation of Booe's sawmill, and Booe has performed custom work for both the county and for members of the county government. Tr. pp. 100–01.

Brown County's continued silence yet actual knowledge of the sawmill operation and approval of Booe's plats are facts more closely akin to the facts and circumstances in *Equicor,* than those in *Tinkle.* Therefore, given Booe's understandable confusion over the location and existence of County Road 169, and Brown County's affirmative acts and nearly thirty-year silence concerning any possible zoning violation with regard to the location and operation of the sawmill, we agree with Booe that Brown County is estopped from challenging Booe's industrial use of his property.[5]

B. *Whether Brown County was estopped to deny Beckemeyer the use of his property for an industrial purpose*

■ Brown County argues that Beckemeyer failed to establish an estoppel de-

fense because he was aware or had the means to know that Tract I–1A was zoned R–2, and therefore, could not be used for any industrial purpose. In support of its argument Brown County primarily relies on a letter Beckemeyer received prior to purchasing the property from Dan Harden, an employee of the Plan Commission ("the Harden letter"). That letter states:

> The special exception granted for sawmill in FR zoning, is granted for the property not the owners as per B.C. zoning ordinance and state statutes. This also allows woodworking in this and any zoning district. This property was given "FR" zoning in error, the zoning is R–2.

Appellant's App. p. 50.

Beckemeyer stated at trial that his understanding from the letter was that woodworking was permitted on Tract I–1A. At trial, he testified that he did not know what "R–2" meant, and did not attempt to discover what it meant. Tr. pp. 121–22. However, he also stated that he was aware that every county has a zoning ordinance. Tr. p. 123.

Prior to his purchase of the property, Beckemeyer knew that Booe operated a sawmill in the area. Tr. p. 114. Also, the real estate listing for the property de-

---

5. The facts of this case are also similar to those in *Board of Zoning Appeals, City of Valparaiso v. Beta Tau Housing Corp.*, 499 N.E.2d 780 (Ind.Ct.App.1986). Although in that case, our court resolved the appeal in its discussion of the doctrine of laches, *see id.* at 782, in a subsequent opinion, we determined that upon closer examination of the discussion in *Beta Tau,* the doctrine of equitable estoppel was actually applied. *Harbour Town Assocs., Ltd., v. City of Noblesville,* 540 N.E.2d 1283, 1288 (Ind.Ct.App.1989).

In *Beta Tau,* the board had actual knowledge that Beta Tau operated a fraternity house on the property in 1971 and again in

1974. Further, despite its knowledge, the board did not contact Beta Tau regarding a zoning violation until 1980 and did not file an enforcement action until 1985. In 1983, when Beta Tau applied for the special exception, the city granted Beta Tau a special exemption. The grant expressly authorized Beta Tau to continue its use of the property which the city later asserted was illegal under the Code. Clearly, the city's acquiescence was a positive action and not mere passive inaction. Lastly, Beta Tau was prejudiced given the fact that it expended approximately $15,000 to remodel its property.

*Id.*

scribed a light industrial pole barn situated on the property. Ex. Vol., Defendant's Ex. 4. When deciding whether to purchase Tract I–1A, Beckemeyer examined the recorded Heritage Hills subdivision plat approved by the Plan Commission, which noted that Tract I–1A was zoned industrial. Also, Beckemeyer testified that every document he reviewed pertaining to Tract I–1A described it as an "industrial piece of property," including the property tax statement from the Assessor's office. Tr. pp. 115–16.

Although the Harden letter indicates that Tract I–1A is zoned R–2, the letter does not address the potential consequences that the R–2 zoning designation has on the special sawmill exception. In fact, the letter states that the special exception "allows woodworking in this and *any zoning district.*" This statement could be interpreted by a reasonable person to mean that regardless of whether Tract I–1A is zoned "FR" or "R–2," the special exception applies to that piece of property. Therefore, we disagree with Brown County's argument that the Harden letter adequately informed Beckemeyer (or gave him the means to know) that Tract I–1A could not be used for any industrial purpose. To the contrary, in conjunction with the recorded Heritage Hills plat, Beckemeyer could and did reasonably rely on the Harden letter to determine that the special exception applied to Tract I–1A.

Given Beckemeyer's reliance on the recorded subdivision plat, the Harden letter, and property tax assessment, and his knowledge of Booe's prior approved use of the property, we agree with the trial court that Beckemeyer did not know or have the means to know that Tract I–1A could not be used for an industrial purpose. Under these facts and circumstances, Brown County is estopped from challenging Beckemeyer's industrial use of his property.

### C. *The Public Interest Requirement*

It is important to note that in *Equicor,* our supreme court did not apply the generally accepted principle that the defense of estoppel cannot be applied against a governmental entity unless it is in the public interest to do so. *See Tinkle,* 748 N.E.2d at 420. The trial court also noted the absence of any discussion of "the public interest" in *Equicor* in its findings of fact, but found that a public interest had been established. We agree. The public clearly has an interest in the reliability of recorded documents, such as subdivision plats, and in relying on the County's affirmative actions over a period of more than twenty years.

The facts of this case are clearly distinguishable from the silent acquiescence in *Tinkle* where the Plan Commission had previously allowed subdivisions contrary to the zoning ordinance and then disapproved a plat that violated the ordinance. *Id.* at 420–21. In this case, the County affirmatively acted many times, including granting the special exception and approving the two, different subdivision plats. Also, the County was well aware of the character of Booe's nearly thirty-year use of his land, and in fact purchased building materials manufactured at Booe's sawmill. Reliance on a governmental entity's affirmative acts is a sufficient public interest to warrant the application of the estoppel defense. *Id.* at 421; *see also Advisory Bd. of Zoning Appeals of City of Hammond v. Found. For Comprehensive Mental Health, Inc.,* 497 N.E.2d 1089, 1092 (Ind.Ct.App.1986) ("[W]e find that the public interest will be threatened in this case if the city, under its ordinance, as written, is allowed to issue building permits to property owners who rely on the permits and expend large sums of money, only to be informed at the last minute that

they cannot occupy the building for which they expended the funds.").

## IV. "De Facto" Rezoning of the Booe Property

In his counterclaim, Beckemeyer alleged that approval of the Heritage Hills subdivision plat containing a designation of Tract I–1A as being zoned industrial constitutes a "de facto rezoning of Tract I–1A to 'industrial.'" Appellant's App. p. 48. In its findings of fact and conclusions of law, the trial court determined:

> With respect to Beckemeyer's counterclaim for declaratory judgment, Beckemeyer is entitled to a judgment that Tract I–1A is zoned industrial. The actions of plaintiffs and their agents were affirmative acts upon which Beckemeyer relied to his detriment. Further, the recording of the Heritage Hills plat constituted an official act of plaintiffs the binding effect of which was to designate Tract I–1A as an industrially zoned tract.

Appellant's App. p. 16. Brown County argues that this finding is contrary to law because " '[d]e facto' rezoning is not authorized by Indiana law." Br. of Appellant at 19.

"Rezoning is a legislative process." *Bryant v. County Council of Lake County,* 720 N.E.2d 1, 4 (Ind.Ct.App.1999), *trans. denied.* Statutory provisions regulating municipal zoning ordinances, and the procedures prescribed for rezoning are found at Indiana Code sections 36–7–4–600 through 699. In the rezoning process,

> [t]he plan commission serves in an advisory capacity. In authorizing advisory plan commissions, the General Assembly did not intend to clothe them with the power to rezone land. The decision of the local legislature to enact a rezoning ordinance is primarily a legislative determination. The power of the plan commission does not derogate from the

legislative power of the local legislative body to enact or amend zoning ordinances. The plan commission does not have the power or the duty to enact ordinances. *See* Ind.Code § 36–7–4–401 (duties of the plan commission); Ind. Code § 36–7–4–405 (plan commission shall make recommendations to legislative body).

*City of Anderson v. Irving Materials, Inc.,* 530 N.E.2d 730, 733 (Ind.1988) (internal citations omitted).

The Plan Commission does have the authority to "render decisions concerning and approve plats, replats, and amendments to plats of subdivisions," *see* Ind. Code § 36–2–4–405 (1997), but the Commission clearly does not have the authority to rezone land. Therefore, we agree with Brown County that the trial court erred when it found that approval of the Heritage Hills subdivision plat effectively rezoned Tract I–1A. Under the facts and circumstances of this case, Booe's and Beckemeyer's current uses are non-conforming uses that Brown County is estopped from preventing.

### Conclusion

Because of its affirmative actions, including granting the special sawmill exception, approving the subdivision plats, and knowledge of Booe's nearly thirty-year use of his property, Brown County is estopped from challenging Booe's and Beckemeyer's current industrial uses of Tract I–1 and Tract I–1A, respectively. However, the trial court erred when it determined that Tract I–1A was effectively rezoned "industrial" when the Plan Commission approved the Heritage Hills subdivision plat.

Affirmed in part and reversed in part.

BAKER, J., and RILEY, J., concur.