**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 02 2013, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**DARLA S. BROWN**
Kelley, Belcher & Brown
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**DOUGLAS A. HOFFMAN**
**JEREMY M. DILTS**
Carson Boxberger LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FRED L. FROESCHKE and JUDITH A. FROESCHKE, | ) ) ) |
| Appellants-Plaintiffs, | ) ) |
| vs. | ) No. 42A04-1301-PL-29 ) |
| CITY OF VINCENNES, | ) ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE KNOX CIRCUIT COURT
The Honorable Sherry B. Gregg Gilmore, Judge
Cause No. 42C01-1105-PL-246

**July 2, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Fred L. Froeschke and Judith A. Froeschke (together, "the Froeschkes") appeal the trial court's order granting summary judgment in favor of the City of Vincennes ("the City") and denying summary judgment to the Froeschkes. They raise two issues, which we consolidate and restate as whether the trial court erred when it granted the City's summary judgment motion as to their claims for breach of contract and promissory estoppel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Al Baldwin ("Baldwin") was the mayor of Vincennes from 2008 to 2011. During his tenure as mayor, he worked on the Railroad Relocation and Sixth Street Overpass Project ("the Overpass Project"). The City was awarded a sizeable federal grant to study the issues it has with the railroad, and the study resulted in a recommendation that the City build overpasses. The original plan for the Overpass Project was to build three overpasses, which would require the acquisition of seven or eight pieces of property, including the Froeschkes' property located at 1025 North Sixth Street in Vincennes, Indiana.

Included in the federal grant funding for the Overpass Project was $5,000,000, and the City was to match twenty percent of that sum, giving the City a total of $6,000,000. In order to take advantage of the grant funding, the City was required to submit bills for the project to the Indiana Department of Transportation, which would then reimburse the City for eighty percent of the Overpass Project with the remaining twenty percent to be paid by the City. On March 12, 2007, the City of Vincennes Common Council ("the City

2

Council") appropriated funds for the Overpass Project through passage of Ordinance 2-2007. This ordinance established Fund 90, which consisted of $1,000,000 for the Overpass Project and Fund 91, which consisted of the $5,000,000 awarded by the federal grants.

On or about January 12, 2009, Baldwin executed a contract with Beam, Longest, and Neff, LLC ("BLN") to provide various consulting services to the City with regard to the Overpass Project. Among other things, BLN was to provide a route survey, an environmental impact statement, a design plan, assistance in obtaining permits, and a determination of all existing rights-of-way. In signing the contract, Baldwin acknowledged that he was authorized by the City to execute the contract. On or about May 5, 2009, Baldwin executed a second contract with BLN for engineering services for the Overpass Project, under which BLN was to provide the City with the following services:

1. Right-of-Way

1.1 Furnish personnel for right-of-way management, appraising, review appraising and owner negotiations as needed for the acquisition of right-of-way, easements or right-of-entry as required for the Project.

1.2 Furnish personnel for the recording of all transfer documents (if required or requested).

1.3 Attend pre-trial meetings and provide courtroom testimony for the Project.

1.4 Meet with the OWNER or its representatives, when requested or necessary for consultation or conference.

3

*Appellants' App.* at 256. Additionally, as part of the second contract between BLN and the City, the City was to:

> Designate a representative to act on behalf of the OWNER with respect to the Services to be performed under the Agreement with such person to have complete authority to transmit instructions, receive information, interpret and define OWNER's policies and decisions pertinent to the Services covered by the Agreement.

*Id*. at 257. Baldwin was that representative.

Mike Montague ("Montague") was the acquisition agent for BLN with regard to federal projects. Montague served as the City's agent to acquire properties for the Overpass Project. On September 24, 2010, Montague tendered a uniform property or easement acquisition offer to the Froeschkes for the purchase of their property for the amount of $327,000. The Froeschkes signed the acceptance portion of the offer on October 18, 2010. The City Council did not approve or authorize the acquisition of the Froeschkes' property and did not approve any claims for monies to be paid to the Froeschkes for the property. The contract for purchase of the property tendered to the Froeschkes by Montague was not provided to the City Council before the offer was made by BLN. The Froeschkes were never paid for the property, and because the transfer of the property was contingent on payment of $327,000, the property was never transferred to the City.

On May 13, 2011, the Froeschkes filed a complaint against the City for failing to pay them the amount of $327,000 for the Froeschkes' property. In their complaint, the Froeschkes alleged breach of contract, unjust enrichment, and promissory estoppel against the City. On May 18, 2012, the City filed a motion for summary judgment. On

September 4, 2012, the Froeschkes filed their cross-motion for summary judgment. After a hearing on the cross-motions for summary judgment, the trial court issued an order[1] on December 20, 2012, granting summary judgment in favor of the City as to the claims of breach of contract and promissory estoppel and denied the Froeschkes' motion for summary judgment. On January 18, 2013, the parties filed a stipulation of dismissal, whereby they dismissed the Froeschkes' claim for unjust enrichment. The Froeschkes now appeal.

## DISCUSSION AND DECISION

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *McGill v. Ling*, 801 N.E.2d 678, 682 (Ind. Ct. App. 2004), *trans. denied.* Relying on specifically designated evidence, the moving party bears the burden of making a prima face showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact

---

[1] We commend the trial court for the thoroughness and clarity of its written order, which has greatly aided this court in its appellate review.

5

exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id*. (citing *Gilman v. Hohman,* 725 N.E.2d 425, 428 (Ind. Ct. App. 2000), *trans. denied*).

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party that lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Hair v. Schellenberger*, 966 N.E.2d 693, 697 (Ind. Ct. App. 2012), *trans. denied*. On appeal, we are bound by the same standard as the trial court, and we consider only those matters that were designated at the summary judgment stage. *Haegert*, 953 N.E.2d at 1220. We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Id*. at 1229-30. A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id*. at 1230. Where, as here, parties have filed cross-motions for summary judgment, we apply the same standard and consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hair*, 966 N.E.2d at 697.

The Froeschkes argue that the trial court erred when it granted the City's motion for summary judgment and denied their motion for summary judgment. They contend that the designated evidence showed that there was a contract between them and the City to purchase their property for $327,000 and that the City breached that contract by failing to pay them the agreed upon amount. The Froeschkes allege that Baldwin had

6

"'complete authority to transmit instructions' to BLN regarding the acquisition of property," *Appellants' Br.* at 19 (quoting *Appellants' App.* at 257), and that the services to be provided by BLN included "owner negotiations as needed for the acquisition of right[s]-of-way, easements or right[s]-of-entry as required for the [Overpass Project]." *Id.* (emphasis omitted). Therefore, they assert that Baldwin and BLN had the authority to "settle on a price with the Froeschkes." *Id.* at 20.

In their complaint, the Froeschkes claimed a breach of contract against the City; therefore, the central issue in this case is whether there was a valid contract between the City and the Froeschkes for the purchase of their property. Pursuant to Indiana Code section 36-4-8-2, "[m]oney may be paid out of the city treasury *only* on warrant of the city fiscal officer." Ind. Code § 36-4-8-2 (emphasis added). The city fiscal officer may only draw a warrant against a city fund if an appropriation has been made for that purpose, the warrant is for a salary fixed by statute or ordinance, the warrant is for a claim allowed by the city legislative body at a meeting, he is ordered to issue a warrant by the city legislative body at a meeting, the warrant is for payment of a judgment that the city must pay, or the warrant is for interest due on city bonds. Ind. Code § 36-4-8-2. Any attempt to bind the City to a contract for which there was no appropriation is void. Ind. Code § 36-4-8-12(b). A contract to pay money, made by city officials without prior appropriation, is invalid. *Hamer v. City of Huntington*, 215 Ind. 594, 600, 21 N.E.2d 407, 410 (1939).

The designated evidence showed that there was a contract between the City, entered into by Baldwin, and BLN. During the time that BLN rendered services to the

7

City, claims had to be submitted to the City Council for payment, ordinances had to be passed, and each claim had to be approved and ordered paid from the City's accounts. There is no dispute that Montague was not the City's fiscal officer; there is also no dispute that Baldwin was not the City's fiscal officer. The ultimate authority to determine whether the City could extend funds to purchase the land lay with the City Council. *See* Ind. Code § 36-4-8-2. There was no evidence presented that the City Council approved or authorized the payment of funds for the Froeschkes' property.

When a city executive officer acts beyond the scope of his authority in making a contract, that contract is void. In *Fort Wayne Patrolman's Benevolent Ass'n, Inc. v. City of Fort Wayne*, 408 N.E.2d 1295 (Ind. Ct. App. 1980), the mayor of the city of Fort Wayne purported to enter into a collective bargaining agreement contract with the Fort Wayne Patrolman's Benevolent Association ("PBA"). However, that contract was never approved by the common council of Fort Wayne, and the PBA sued to enforce the contract. *Id*. at 1299. In affirming the grant of summary judgment in favor of the city of Fort Wayne and finding the contract void, a panel of this court held:

> The mayor had neither the statutory authority to bind the city to this agreement nor the authority of the common council to act in their behalf and enter into such an agreement. His actions were, therefore, an usurpation of unwarranted power, not authorized by the common council's resolution or any legislative enactment of the State of Indiana. As a result, the collective bargaining agreement was void, and the city had the right to refuse compliance.
>
> In general, a municipality is not estopped from denying the validity of a contract made by its officers when there has been no authority for making such a contract.

*Id*. at 1302 (internal citations and quotations omitted).

8

Montague, who was not even an employee of the City, was not authorized by statute, ordinance, or resolution to commit the City to pay $327,000 for the acquisition of the Froeschkes' property. No resolution was ever passed by the City Council to commit to the expenditure of funds for such purpose. While Baldwin may have entered into a contract with BLN, and the City Council may have approved previous claims for work performed by BLN, neither Baldwin nor BLN had the authority to enter into contracts for the purchase of real estate, including the purchase of the Froeschkes' property, without the approval of the City Council, there had been no prior agreement or written authorization to do so, and no resolution or ordinance had been passed appropriating the funds for the purchase of the Froeschkes' property.

Although BLN, through Montague, was authorized to negotiate on behalf of the City, there was no evidence that BLN was able to bind the City to an expenditure of money without express authorization of the City Council. Even if Baldwin had directly contracted with the Froeschkes, he would not have been able to bind the City as to the purchase of the Froeschkes' property. Although pursuant to Indiana Code section 36-4-5-3(9), a mayor shall "sign all bonds, deeds, and contracts of the city and all licenses issued by the city," this authority does not authorize a mayor to sign contracts regarding matters delegated to other governmental officials under other statutes. *See Fort Wayne Patrolman's Benevolent Ass'n*, 408 N.E.2d at 1302. Therefore, BLN, which derived its

authority from its contract with Baldwin, could not enter into a contract on behalf of the City if Baldwin could not enter into the same contract.[2]

Based on the evidence before the trial court, there was no valid contract between the City and the Froeschkes to purchase the Froeschkes' property. There was no appropriation of funds by the City Council for the purchase of the property, and a contract to pay money, made by city officials without prior appropriation, is invalid. *Hamer*, 215 Ind. at 600, 21 N.E.2d at 410. As there was no valid contract, there could be no breach of contract, and the trial court correctly granted summary judgment to the City on the Froeschkes' claim of breach of contract.

The Froeschkes further contend that their property was acquired pursuant to Indiana's eminent domain proceedings pursuant to the general eminent domain statutes. The general eminent domain statute required the municipality to "make an effort to purchase" the property at issue "before proceeding to condemn." Ind. Code § 32-24-1-3. The Froeschkes assert that the City, through Baldwin, delegated its ability to acquire property through eminent domain proceedings to BLN, which made an effort to purchase their property through the offer at issue. However, as we have previously concluded, the City did not appropriate any money for the purchase of the Froeschkes' property and,

---

[2] The Froeschkes also argue that the contract to purchase the property was ratified by payment to BLN for its services rendered to the City because BLN would have no reason to think that it could not acquire property for the Overpass Project since its contracts to provide services to the City had been ratified. All contracts made in violation of the statute prohibiting anybody from binding a city to any agreement when no appropriation has been made are invalid, and a subsequent appropriation will not validate the same. *Miller v. City of Evansville*, 244 Ind. 1, 5, 189 N.E.2d 823, 825 (1963). Therefore, the Froeschkes' argument fails.

therefore, did not make an effort, pursuant to Indiana Code section 32-24-1-3, to purchase the property.

The Froeschkes also argue that the trial court erred when it denied summary judgment on their claim of promissory estoppel. However, estoppel is not generally applicable against governmental entities for the actions of public officials. *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007). In *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348 (Ind. Ct. App. 1981), this court addressed this rule, stating as follows:

> We acknowledge that the general rule in Indiana is that the public, whether it be a state or local governmental body, cannot be estopped by the unlawful acts of public officials. The reason for this rule is said to be that if laches, waiver or estoppel did apply against the public, a dishonest, incompetent or negligent public official could wreck the interests of the public. Our courts have been particularly unsolicitous of estoppel and laches arguments in cases where the unauthorized acts of public officials somehow implicate government spending powers.
>
> For example, in *Mazac v. City of Michigan City*, Mazac entered into a contract with the city to provide garbage collection, but the contract was not submitted to the city council as required by law. Mazac alleged the city was estopped from denying liability under the contract because it had been acted upon and partly performed. Our court rejected the defense, reasoning that since the contract was void, there could be no estoppel. In *Hamer v. City of Huntington*, the court held a city was not contractually bound to pay for a fire truck because funds for the purchase of the vehicle were not appropriated until after the contract was entered into; Indiana law required that funds be appropriated before the contract was made. The court rejected the equitable doctrine of estoppel even though the fire truck had been delivered to and accepted by the city: If one dealing with the city could plead ignorance of the laws governing the city or of the appropriated balance which the city has and thereby make valid a contract made by the city contrary to [statute], the effect of such statute and our budget laws would be destroyed.

. . . .

11

What is certain is that when our laws clearly limit the authority of government officials to act, or when the law clearly prescribes a procedure to be followed, private parties must carefully take note of that limitation or procedure before dealing with a governmental entity.

*Id.* at 354-56 (internal citations and quotations omitted).

The Froeschkes acknowledge the general rule that estoppel is not applicable against governmental entities, but cite to three cases where estoppel was applied against governmental entities and argue that estoppel should apply here, as in those cases, because the City Council was silent when it had a duty to speak and had ample opportunity to object to the process Baldwin was employing to acquire property. In *Town of New Chicago v. City of Lake Station*, 939 N.E.2d 638 (Ind. Ct. App. 2010), *trans. denied*, estoppel was found to be applicable when Lake Station, which had a duty to bill New Chicago the appropriate amount under an agreement for a sewer system, remained silent for fifteen years when the sewer rates increased, allowing New Chicago to pay the former rate, but later sought reimbursement when a judgment was entered against Lake Station. *Id.* at 657. In *Equicor Development, Inc. v. Westfield-Washington Township Plan Commission*, 758 N.E.2d 34 (Ind. 2001), estoppel was held to be appropriate because Equicor detrimentally relied on the municipality's silence and the municipality had a duty to speak, where the municipality remained silent as to insufficient parking in Equicor's plat when it was initially submitted for approval, but later denied approval after other changes recommended by the municipality had been made. *Id.* at 40. In *Brown County Indiana v. Booe*, 789 N.E.2d 1 (Ind. Ct. App. 2003), *trans. denied*, this court found that the governmental entity was estopped from

12

challenging a saw mill operation, which constituted a zoning violation, because the governmental entity's affirmative acts of approving plats with industrial purposes and continued silence as to the operation of the sawmill when the governmental entity, through its representatives, had knowledge of the operation. *Id*. at 10.

We do not find these cases to be instructive in the determination of the present case. None of the cases cited by the Froeschkes contained an issue of whether the person or entity making the representations to the plaintiff had authority to bind the governmental entity. None of the cases involved applying the doctrine of estoppel to a situation involving an appropriation for the spending of the governmental entity's money, which is particularly disfavored. *See Cablevision of Chicago*, 417 N.E.2d at 354. These cases, therefore, do not sway us from the general rule that the doctrine of promissory estoppel is not applicable against governmental entities.

We thus conclude that the trial court did not err when it granted the City's motion for summary judgment and denied the Froeschkes' motion for summary judgment. Because the City Council did not make an appropriation for the purchase of the Froeschkes' property, the contract for that purchase was void as a matter of law and could not later be ratified to make it valid. Additionally, pursuant to Indiana law, the doctrine of promissory estoppel and other equitable doctrines are not applicable to governmental entities, such as the City, to mandate that the entities expend money that has not been appropriated or authorized.

Affirmed.

VAIDIK, J., and PYLE, J., concur.

13